LOUIS E. MACHT,

*vs.*

MERCHANTS MORTGAGE AND CREDIT COMPANY, a corporation of the State of Delaware, and HOME FINANCE COMPANY, a corporation of the State of Delaware.

*New Castle, June* 30, 1937.

*Harry Rubenstein,* for complainant.

*William H. Bennethum,* of the firm of Marvel, Morford, Ward & Logan, for defendants.

THE CHANCELLOR: The complainant is a stockholder of Merchants Mortgage & Credit Company, herein called Merchants. The sale by Merchants of all its assets to Home Finance Company was effected by virtue of proceedings purporting to have been in compliance with the requirements of what was formerly commonly referred to as *Section 64A* of the *General Corporation Law,* now appearing in the *Revised Code of* 1935 as *Section 2097, Section 65* of *Chapter 65.*

Sales under the section are permitted only when the terms are approved by the directors as expedient and for the best interests of the corporation, and "when and as authorized by the affirmative vote of the holders of a majority of the stock issued and outstanding having voting power given at a stockholders' meeting duly called for that purpose, or when authorized by the written consent of the holders of a majority of the voting stock issued and outstanding, provided, however, that the Certificate of Incorporation may require the vote or written consent of the holders of a larger proportion of the stock issued and outstanding."

The sale was approved by the directors on December 13, 1933. It was authorized by the written consent of the holders of a majority of the class A common stock on December 30, 1933, and was consummated on March 7, 1934. Before corporate proceedings looking to a sale of assets were inaugurated, there had been filed in this court a petition to determine who were the directors of Merchants. The petition was heard and decided on March 8, 1935. Thus action looking to a sale of all the assets was commenced by directors whose offices were then under challenge and was consummated by them before this court

handed down its decision. See *Vogtman v. Merchants' Mortgage & Credit Co., et al.,* 20 *Del. Ch.* 364, 178 *A.* 99. The directors who approved the sale were held by the court not to be the lawfully elected directors. The probable reason for the action of the directors in disposing of all the assets while the *de jure* title to their offices was under judicial examination, is stated in the opinion this day filed in a companion case, wherein the complainant here made complaint against certain other acts of the same individuals, who as directors and officers of Merchants were in *de facto* control of its affairs. *See ante p.* 74.

Merchants had three kinds of stock outstanding—a preferred issue and a common issue of class A and class B. Voting power was lodged in the class A common stock. But upon the failure of Merchans to pay two semi-annual dividends, voting power shifted from the class A common to the preferred. In the *Vogtman Case, supra,* it was decided that the dividends paid must be lawful dividends, and that consequently if there was a payment of an unlawful dividend, followed by a failure to pay a dividend at the next semi-annual period, there was a default under the charter whereby the voting power became lodged in the preferred stock.

On December 13, 1933, the directors declared a dividend for one semi-annual period of four dollars per share on the preferred stock, payable on December 28, 1933, to stockholders of record on December 18, 1933. This dividend was duly paid. Thus, the defendants contend, on December 30, 1933, when the class A common stockholders consented to the sale of the assets two periods were not in default, and so the voting power had consequently returned to the common stock. It is by no means certain that the dividend of December, 1933, cured the two-period default; because the preceding July dividend had been passed, and the preceding January, 1933, dividend was an illegal one as held in the *Vogtman Case.*

But I lay aside that point, conceding it, generously I think, as of no trouble to the defendants.

Even with the concession, the defendants' case is still in a bad situation. This is for the reason that the dividend of December, 1933, was in my opinion an illegal one. The company had had neither net profits nor surplus from which the dividend could be legally paid. In the *Vogtman Case* I reviewed the financial condition of the company down to December 31, 1932, and found that a dividend was impossible under the law as of that date. The evidence in that case is before me in this one. My views of it are unaltered.

The only question then is whether the condition of the company so improved during 1933 as to show a financial condition at the close of the year which would reveal a fund legally available for dividends. Evidence was adduced in this case upon that subject. I shall not review it. It is sufficient to announce my conclusion therefrom. That conclusion is that not only had the financial situation not improved; it had in fact grown worse. Neither surplus nor net profits existed from which a dividend could be legally paid.

The result is that on December 30, 1933, when the class A common stock assumed to consent to the sale of assets, that stock had no voting power. Its consent was therefore ineffective under the section of the act, above referred to, to authorize the sale.

As the preferred stock was then the sole voting stock, and as it never consented to the sale, the sale was void.

Decree for the complainant.