George S. PETTY, Plaintiff,

v.

PENNTECH PAPERS, INC., a Delaware
Corporation, et al., Defendants.

Court of Chancery of Delaware,
New Castle County.

Decided July 29, 1975.

Submitted July 25, 1975.

Richard F. Corroon, Potter, Anderson &
Corroon, Wilmington, for plaintiff.

Louis J. Finger, Richards, Layton &
Finger, Wilmington, for defendants.

BROWN, Vice Chancellor.

Plaintiff is the owner of 11,500 shares of
the common stock of the defendant Penn-
tech Papers, Inc., a Delaware corporation
("Penntech"). Individually and deriva-
tively, he seeks a temporary restraining
order to prevent the redemption by the
corporation on July 31, 1975 of 19,000
shares of Series A Preferred stock. Ul-
timately, he seeks a permanent injunction
against the present plan to redeem these
preferred shares. I deal here with the tem-
porary restraining order application only,
without proposing to adjudicate the final
merits of the action.

The requisites for granting tem-
porary injunctive relief in corporate liti-
gation, as well as in other matters, was
ably reviewed by the Chancellor in *Gimbel
v. Signal Companies, Inc.*, Del.Ch., 316 A.
2d 599 (1974), *aff'd.*, Del.Supr., 316 A.2d
619 (1974). As there pointed out, the

power to enjoin challenged conduct prior to a full evidentiary hearing constitutes the strong arm of equity jurisdiction, and should never be utilized unless a clear case of imminent, irreparable injury is presented and the applicant satisfies the Court that he has at least a reasonable probability of ultimate success on final hearing. In addition, it is imperative to a proper exercise of discretion that the court balance the conveniences of the parties and the possible injuries to them that may be affected by either the granting or witholding of injunctive relief. I will therefore weigh the present arguments and undisputed facts of record against these standards.

As presently constituted, Penntech came into being in 1969. Its principle business is the manufacture of paper at a pulp and paper mill located in Johnsonburg, Pennsylvania. In 1974 it had net sales of $44,488,000 and net income of $6,513,000. Penntech has 250,000 shares of authorized common stock of which 77,949 were outstanding as of December 31, 1974. It is also authorized to issue 30,000 shares of Series A Preferred stock, of which 26,000 shares were outstanding as of December 31, 1974. The Series A Preferred stock has an annual, noncumulative dividend rate of $5 per share, as and when declared by the Board of Directors. No dividend has ever been paid on this stock. Each holder of the Series A Preferred stock is entitled to 10 votes for each share held and, as a class, the holders of such preferred stock are entitled to elect a majority of the Board of Directors. The Series A Preferred is redeemable at $100 per share, and, pursuant to the corporate charter, may be redeemed selectively and at such times as decided upon by the Board of Directors.

The defendant John Leslie ("Leslie") is Penntech's Chief Executive officer and Chairman of its Board of Directors, having replaced the plaintiff in this capacity in 1972. Defendant Allen J. Nadeau ("Nadeau") is vice-president and also a Director. The other two named individual de-

fendants, Peter M. Leslie and Richard H. Tatlow, IV, comprise the balance of Penntech's four-member Board of Directors.

Defendants John Leslie and Nadeau together own some 7,000 shares of the Series A Preferred stock. However, notice of redemption was sent to all holders of the preferred stock except Leslie and Nadeau and it is without question at this time that there is no intention to redeem the preferred shares of these two defendants. No reason for redemption was stated in the notice, nor is it stated that the Series A Preferred stock held by Leslie and Nadeau is not being redeemed.

The cost to the corporation to redeem all oustanding Series A shares except those owned by Leslie and Nadeau will be approximately $1,900,000. Once redemption is accomplished Leslie and Nadeau, as sole remaining owners of the Series A Preferred, will have the exclusive right to elect a majority of Penntech's Board of Directors. In addition, they will have the right to cast 70,000 votes by virtue of their ownership of 7,000 shares of the Series A Preferred and those votes, coupled with some 9,500 votes incident to their ownership of that number of shares of Penntech's common stock, will give them the right to cast 53 per cent of the votes with respect to any matter submitted to a vote of Penntech's shareholders. In short, the [7] selective redemption by the present Board of Directors will give Leslie and Nadeau full control of Penntech hereafter, and this will be accomplished by the expenditure of $1,900,000 of corporate funds to redeem preferred stock on which no dividend is accumulating and on which none has ever been declared.

Turning from these undisputed facts to the area of argument, plaintiff asserts that at present all Series A shares are held in a voting trust which Leslie controls. It is said that the voting trust will expire by its terms on December 31, 1975, thus presumably returning the right to vote to the owners of the shares. Plaintiff thus sug-

gests that it is no coincidence that present management has elected to redeem all shares other than their own and thereby cancel some 190,000 votes before the voting trust terminates.

Also, plaintiff points to the long-term debt commitments of Penntech in the sum of $7,500,000 secured by 9 per cent first mortgage notes, given to Teachers Insurance and Annuity Association of America ("Teachers"). The underlying mortgage contains prepayment provisions which, if met, would cancel Teachers' present right to convert $500,000 worth of the 9 per cent notes into Penntech common stock and would also cancel certain stock warrants held by Teachers for the purchase of Penntech common at $1 per share. Thus, plaintiff suggests that the corporation would be better served by prepaying on these obligations with the $1,900,000 since, due to the noncumulative dividend status of the preferred, the corporation will be deriving no immediate benefit from the selective redemption of the 19,000 shares. Plaintiff also suggests that the proposed redemption may well work a default in the terms of the obligation to Teachers, although defendants vigorously dispute this.

From the defendants' standpoint it is argued that the certificate of incorporation provides that the corporation may "at any time or from time to time redeem the whole or any part of the Series A Preferred," and that consequently they have express authority to make the selective redemption of all shares except those of Leslie and Nadeau. Defendants say that the preferred shares were issued to the original investors in what was then a high risk venture so as to give them a senior equity position and repose control in them in order that they might obtain the return of their investment at the earliest practical time if the venture proved successful. They further allege that when the venture appeared to be foundering under the then management of the plaintiff, he was removed in favor of Leslie and Nadeau, who later were allowed to purchase their 7,000 shares from the original preferred shareholders at 1¢ per share as an incentive to themselves and thus the corporation. They say that since the corporation is now prospering under their management, it is only proper to redeem the preferred stock and return the investment to all other preferred shareholders as originally contemplated.

The reason given for not redeeming the shares of Leslie and Nadeau is twofold. First, in view of the spirit in which they were allowed to purchase their shares, i. e., as an incentive to their continuing management and offering their best efforts on behalf of Penntech, it would be premature to allow them to redeem now at $100 per share the stock which they purchased for 1¢ per share. Second, if all shares are redeemed, there is, allegedly, a strong possibility that the redemption would be treated as a dividend rather than a return of capital for purposes of federal income taxation and thus would be taxed as ordinary income to all preferred shareholders.

Moreover, defendants contend that they can scarcely be charged with a motivation to obtain control of the corporation by the stock redemption since they are already in control. The proposed redemption will bring about no shift in this status. They argue that the case precedents cited by the plaintiff all involved situations where there was a contemporaneous threat to corporate control and the improper action taken was to use corporate funds or stocks in an effort to defeat such a threat. Since there is no challenge to their control here, they say that plaintiff's authorities are off point.

Finally, defendants urge that there can be no imminence of irreparable harm to the corporation since it will be paying a debt justly owed and since the end result will be to afford the common shareholders a greater say in corporate affairs by virtue of the elimination of the 190,000 votes represented by the shares to be redeemed.

■ Having considered the foregoing, I am of the opinion that the plaintiff is entitled to enjoin, at least temporarily, the proposed stock redemption. I reach this conclusion for the following reasons.

■ The basis for plaintiff's suit is that Penntech's present management is about to use $1,900,000 of corporate funds for the sole and improper purpose of perpetuating itself in office. Clearly directors of a corporation stand in a position of trustees with the stockholders, *Lofland v. Cahall*, 13 Del.Ch. 384, 118 A. 1 (1922); *Bowen v. Imperial Theaters, Inc.*, Del.Ch., 13 Del.Ch. 120, 115 A. 918 (1922), and the utmost good faith and fair dealing are required of them, especially where their individual interests are concerned. Moreover, the fact that charter or by-law provisions may technically permit the action contemplated does not automatically insulate directors against scrutiny of purpose. See *Schnell v. Chris-Craft Industries Inc.*, Del.Supr., 285 A.2d 437 (1971) where it was held that even though it was authorized by the by-laws, management could not advance the date of the annual shareholders meeting when it was clearly done to limit the ability of dissident shareholders to wage a proxy fight, and see also *Condec Corp. v. Lunkenheimer Co.*, Del.Ch., 230 A.2d 769 (1967) where the issuance of additional shares to thwart the acquisition of majority stock control by another was held to be without justification.

■ In addition, it is unquestionably Delaware law that the use of corporate funds to purchase corporate shares primarily to maintain management in control is improper. *Bennett v. Propp*, 41 Del.Ch. 14, 187 A.2d 405 (1962); *Macht v. Merchants Mortgage and Credit Co.*, 22 Del.Ch. 70, 194 A. 23 (1937); *Yasik v. Wachtel*, 25 Del.Ch. 247, 17 A.2d 309 (1941). Here it appears that redemption of all preferred shares other than those owned by Leslie and Nadeau will assure their continued control of Penntech (even though they may not be under open assault at present) and particu-larly if it does away with such shares prior to the expiration of the voting trust which present management now controls. Under such circumstances, a selective redemption of a large amount of voting stock which thereby guarantees control in those determining to make the redemption would initially seem no different in result than a purchase of shares with corporate funds to remove a threat to incumbent management policy and control, in which latter case the burden is on the directors to justify the purchase as one primarily in the corporate interest and not their own. *Bennett v. Propp, supra.*

At this juncture, to redeem all other preferred stock, but none of their own, so as to continue their own business incentive and to avoid a possible, but yet unsubstantiated, tax consequence to the other preferred shareholders, does not appear sufficient to carry the day for the present defendants when the various other factors alleged by the plaintiff are considered.

Furthermore, since the Series A stock carries with it no actual dividends at this time, and has paid none heretofore, it may assume that its owners would be more than willing to have it redeemed. If it is redeemed, and it is thereafter concluded that such a selective redemption was wrongful, a voluntary return of the redemption price by the former owners would seem a dim prospect. Thus, some $1,900,000 of corporate funds would presumably be gone forever, from the corporate coffers, and a return of corporate voting power, or potential power after the termination of the voting trust, to the *status quo ante* would be impossible. When this is balanced against a mere delay in payment of the fixed redemption price, it seems clear that the likelihood of irreparable harm for the corporation and its common shareholers on whose behalf plaintiff brings suit easily outweighs the potential for harm stemming from a delay in the actual redemption of the Series A stock which the directors were under no time limitation to make anyway.

A temporary restraining order will issue enjoining the noticed redemption of the Series A Preferred stock pending further order of the Court. Since the only apparent damages to which this action may expose Penntech is the possible claims of preferred shareholders attributable to the delay in receiving payment for share certificates which they may have already surrendered, it would seem that a nominal bond in the sum of $2,500 would be sufficient. However, defendants are free hereafter to seek an increased bond if they deem it necessary and upon a proper showing.

Counsel for the plaintiff is directed to submit an appropriate order on notice.