In re James E. TWITCHELL and Jeanine P. Twitchell, Debtors.

OREM POSTAL CREDIT UNION, Plaintiff/Appellee,

v.

James E. TWITCHELL, Defendant/Appellant.

Civ. No. C-87-873W.

United States District Court, D. Utah, C.D.

Feb. 22, 1988.

Richard F. Bojanowski, Salt Lake City, Utah for defendant/appellant.

Bruce L. Richards, Salt Lake City, Utah, for plaintiff/appellee.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This is an appeal from a bankruptcy court memorandum opinion and order determining that a $20,958.37 debt is not dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(4). Richard F. Bojanowski appeared on behalf of James E. Twitchell, the appellant, and Bruce L. Richards appeared on behalf of the Orem Postal Credit Union, the appellee. The court heard oral argument on January 28, 1988 and took this matter under advisement. The court has carefully reviewed the appellate briefs of counsel, the record on appeal, and all case law pertinent to the issues on appeal. Being now fully advised, the court is of the opinion that the decision of the bankruptcy court should be reversed and the debt discharged pursuant to 11 U.S.C. § 727.

### Factual Background

In 1974 the Orem Postal Credit Union (the "Credit Union") employed James E. Twitchell as a credit manager. Later, the Credit Union appointed Mr. Twitchell as president and treasurer of the Credit Union. On June 3, 1985, James and Jeanine Twitchell filed a petition for relief under Chapter 7 of the Bankruptcy Code. Subsequently, the Credit Union filed an adversary proceeding against Mr. Twitchell to seek a determination that the debt owed to it by Mr. Twitchell was nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (4), and (6).

Following a trial of this matter, the bankruptcy court made findings of fact and conclusions of law on the record. The bankruptcy court found that Mr. Twitchell, as president and treasurer of the Credit Union, owed the Credit Union the sum of $20,958.37 for his failure to apply proceeds from the sale of his home to satisfy a loan obligation, his unauthorized payment of payroll checks, his failure to withhold payroll taxes, his improper approval of a loan to W. LeGrand Ellison and himself, and his unauthorized release of the Credit Union's lien on his property. Despite these findings, the bankruptcy court initially held that the $20,958.37 debt was dischargeable due to the Credit Union's failure to prove the elements of reasonable reliance under section 523(a)(2)(A), the necessary fraud under section 523(a)(4), and the requisite intent under section 523(a)(6). On July 29, 1986, the bankruptcy court entered a judgment in favor of Mr. Twitchell. The court dismissed the complaint and awarded Mr. Twitchell attorney's fees and costs.

On August 22, 1986, the bankruptcy court heard the Credit Union's motion for a new trial or to amend the findings, conclu-

sions and judgment. After a hearing and review of this motion, the bankruptcy court denied the motion for a new trial but amended its findings and conclusions to hold that the $20,958.37 obligation was nondischargeable in bankruptcy. The court only amended its earlier findings and conclusions relating to the elements of proof under section 523(a)(4). The court held that the obligation arose from a defalcation by Mr. Twitchell while acting in a fiduciary capacity and was thus nondischargeable under 11 U.S.C. § 523(a)(4). The court granted judgment to the Credit Union in the amount of $20,958.37 plus interest, attorney's fees and costs. The amended judgment was entered on September 29, 1987, and the memorandum opinion was published in 72 B.R. 431 (Bankr.D.Utah 1987). Mr. Twitchell filed a timely notice of appeal on October 7, 1987.

### Discussion

On appeal, the district court can reverse a bankruptcy court's judgment after a *de novo* review of questions of law or mixed questions of law and fact. *In re Mullet,* 817 F.2d 677, 679 (10th Cir.1987); *In re Yeates,* 807 F.2d 874, 877 (10th Cir.1987). On the other hand, a bankruptcy court's findings of fact are reversible only if they are clearly erroneous. Bankruptcy Rule 8013; *In re Yeates,* 807 F.2d at 876 (10th Cir.1986).

The sole issue on appeal is whether Mr. Twitchell was in a fiduciary capacity, within the meaning of section 523(a)(4), when the defalcations occurred. The bankruptcy court found that Mr. Twitchell had been acting in a fiduciary capacity within the meaning of section 523(a)(4) while serving as president and treasurer of the Credit Union. The court concluded that Title 7 of the Utah Code placed Mr. Twitchell, as an officer of a financial institution, in a fiduciary relationship to the Credit Union. By virtue of this fiduciary relationship, Mr. Twitchell was a "trustee" pursuant to state law and, thus, was in a fiduciary capacity for the purposes of section 523(a)(4). *In re Twitchell,* 72 B.R. 431, 434 (Bankr.D.Utah 1987). While serving in this fiduciary capacity, the court found that Mr. Twitchell

committed various defalcations from the Credit Union in the sum of $20,958.37. *Twitchell,* 72 B.R. at 436.

### *The Section 523(a)(4) Exception to Discharge*

Section 523 of the Bankruptcy Code provides certain narrow exceptions to a discharge. Section 523(a)(4) narrowly excepts from discharge in bankruptcy any debt based on a defalcation while acting in a fiduciary capacity. This provision provides as follows:

> (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt ...
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny....

11 U.S.C. § 523(a)(4).

The cases construe Code section 523(a)(4) very narrowly so as to not frustrate the fundamental policy of promoting the fresh start of the debtor. *In re Black,* 787 F.2d 503, 505 (10th Cir.1986). A central purpose of bankruptcy legislation is to provide the debtor with comprehensive relief from the burden of his debts by discharging him of virtually all of his debts. *In re Cross,* 666 F.2d 873, 879 (5th Cir.1982). Bankruptcy provides debtors "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). To these ends, courts have narrowly construed exceptions to discharge against the creditor and in favor of the debtor. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915).

█ Prior to 1970, the question of whether an individual debt was dischargeable was within the scope of state law jurisdiction. Amendments to the Bankruptcy Act in 1970 granted exclusive jurisdiction over questions of dischargeability to the bankruptcy courts in an effort to curb creditor abuses that had undermined the discharge of the bankrupt. *See generally, In*

*re Huff,* 1 B.R. 354, 356 (Bankr.D.Utah 1979) (citing S.Rep. No. 91–1173, 91st Cong., 2d Sess. (Sept. 16, 1970); House Judiciary Comm., H.R.Doc. No. 19–1502). Consequently, the question of who is in a fiduciary status for purposes of section 523(a)(4) is one of federal law. *Black,* 787 F.2d at 506.

*Fiduciary Capacity*

The term "fiduciary capacity" as defined by federal law, applies only to technical trusts, express trusts, or statutorily imposed trusts and not to fiduciary relationships which arise from an equitable or implied trust or an agency relationship. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934); *In re Romero,* 535 F.2d 618, 621 (10th Cir.1976); *Savonarola v. Beran,* 79 B.R. 493, 495 (Bankr.N.D.Fla.1987); *In re Reder,* 60 B.R. 529, 538–39 (Bankr.D.Minn. 1986); *In re Myers,* 52 B.R. 901, 904 (Bankr.E.D.Va.1985).

The term "fiduciary capacity" as used in section 523(a)(4) has its origin in the Bankruptcy Act of 1841. This Act provided that "all persons whatsoever, residing in any state, territory, or district of the United States, owing debts which shall not have been created in consequence of the defalcation as a public officer,[1] or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity" could, upon compliance with the Act, receive a discharge.

In 1844, the meaning of "fiduciary capacity" under the 1841 Act came before the Supreme Court in *Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844). In *Chapman,* the Court held that a factor, entrusted with selling cotton for another, was not a fiduciary within the meaning of the bankruptcy law. The Court discharged the factor's debt, which arose from the factor's failure to remit sales proceeds to his principal. The Court gave the term "fiduciary capacity" a narrow construction, observing that a debt of a person, not covered under the specified exceptions, was dischargeable even though the person may be under a fiduciary obligation. *Chapman,* 43 U.S. (2 How.) at 207. Further, the Court speculated that if the 1841 Act discharged a debt of a factor who retained sale proceeds of his principal,

> ... it will be difficult to limit its application. [Accordingly, the 1841 Act] must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act.

> The cases enumerated, "the defalcation of a public officer," "executor," "administrator," "guardian," or "trustee," are not cases of implied, but special trusts, and the "other fiduciary capacity" mentioned, must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore within the act.

*Id.*

In 1934, the Supreme Court observed that the meaning of the phrase "acting in a fiduciary capacity" had been fixed by judicial construction for nearly a century. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934). The Supreme Court stated that the *Chapman* construction, that the statute "speaks of technical trusts, and not those which the law implies from the contract," had been applied with unbroken continuity. *Id.* (quoting *Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 208, 11 L.Ed. 236 (1844)).

The Tenth Circuit Court of Appeals stated that the term fiduciary capacity, within the exception of section 17(a)(4) of the for-

---

1. A "public officer" is commonly known to be a person legally elected or appointed to exercise governmental functions. Webster's New Collegiate Dictionary 925 (1979).

mer Bankruptcy Act,[2] "has been held to connote the idea of trust or confidence, which relationship arises whenever one's property is placed in the custody of another." *In re Romero,* 535 F.2d 618, 621 (10th Cir.1976). The court further recognized that "the exception under section 17(a)(4) applies only to technical trusts and not those which the law implies from a contract." *Id.* (citing *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934)).

This case authority recognizes that the traditional definition of a "fiduciary" is not applicable in defining "fiduciary capacity" under section 523(a)(4). The general meaning of a fiduciary—a relationship involving confidence, trust and good faith—is far too broad for the purposes of section 523(a)(4). *In re Cairone,* 12 B.R. 60, 62 (Bankr.D.R.I. 1981). The Supreme Court favors a narrow construction of the term "fiduciary capacity" and defines the term as meaning arising from an express or technical trust. *Davis,* 293 U.S. at 333, 55 S.Ct. at 153–54.

Despite this narrow Supreme Court construction, a few cases hold that a debt due to a breach of a fiduciary duty by a corporate or bank officer is not dischargeable. *See John P. Maguire & Co. v. Herzog,* 421 F.2d 419, 422 (5th Cir.1970); *In re Hammond,* 98 F.2d 703, 705 (2nd Cir.1938); *In re Overmyer,* 52 B.R. 111, 118 (Bankr.S.D. N.Y.1985). These cases construe the term fiduciary capacity very broadly, requiring only that a fiduciary relationship exist between an officer and his corporation.

Nevertheless, such a broad construction runs contrary to the stated judicial construction of "fiduciary capacity" by the Supreme Court. In addition, a central purpose of the bankruptcy Code is to further the fresh start of the debtor. Thus, the exceptions to discharge should be construed, in close cases, against the creditor and in favor of the debtor.[3]

To establish that Mr. Twitchell was in a fiduciary capacity, the Credit Union had the burden to show that Mr. Twitchell was a trustee pursuant to an express agreement or statute. Further, the Credit Union had the burden to show that the trust relationship existed before the defalcation occurred and that it did not arise *ex maleficio. Romero,* 535 F.2d at 621. The fiduciary relationship of Code section 523(a)(4) does not encompass ordinary commercial relationships such as those of a principal/agent or debtor/creditor. *In re Ayers,* 25 B.R. 762, 774 (Bankr.M.D.Tenn.1982). Therefore, the Credit Union must show that all of Mr. Twitchell's defalcations occurred while he was acting as a trustee and did not arise from his ordinary commercial transactions with the Credit Union.[4]

### a. Express or Technical Trust

■ The elements for an express trust include (1) sufficient words to create a trust, (2) a clearly defined trust res, and (3) an intent to create a trust relationship. *In re Kwiat,* 62 B.R. 818, 821 (Bankr.D.Mass. 1986); *see also Sundquist v. Sundquist,* 639 P.2d 181, 183–84 (Utah 1984).[5] An

2. Section 17(a)(4) of the former Bankruptcy Act which preceded Bankruptcy Code section 523(a)(4) provided that a petitioner's debts were nondischargeable if they "were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity."

3. Consistent with this fresh start policy, the Tenth Circuit has narrowly construed other exceptions to discharge in favor of the debtor. *See generally, In re Mullet,* 817 F.2d 677 (10th Cir.1987) (construing section 523(a)(2)); *In re Compos,* 768 F.2d 1155 (1985) (construing section 523(a)(6)).

4. Generally, provable debts arising from ordinary commercial transactions between a debtor and a creditor are dischargeable. *See Matter of*

*Dove,* 78 B.R. 630, 636 (Bankr.M.D.Ga.1986). Here, Mr. Twitchell's $20,958.37 debt to the Credit Union arose, in part, from his failure to satisfy a loan obligation and his improper approval of a loan to himself and Mr. Ellison. This portion of the debt appears to arise from ordinary commercial transactions and thus, for policy reasons, should be dischargeable.

5. The Tenth Circuit Court of Appeals recognizes that "state law is an important factor in determining when a trust relationship exists." *In re Black,* 787 F.2d 503, 506 (10th Cir.1986). *Sundquist* describes the elements of an express trust as including an intent to create a trust and trust property that is clearly specified and set aside. Further, the essential terms of the trust must be clear to enable a court to enforce the resulting equitable duties. *Sundquist,* 639 P.2d at 183–84.

express or technical trust is distinguished from a trust the law implies from a contract. *Romero*, 535 F.2d at 621.

■ The Credit Union argues that the bylaws of the Credit Union established the management duties of Mr. Twitchell as an officer. In particular, the bylaws gave the office of the president the charge of "cash, securities, books of account and other valuable papers of the credit union." Bylaws of the Orem Postal Credit Union at 7.2.1.

Although the bylaws imposed a fiduciary duty upon Mr. Twitchell, as president and treasurer, the bylaws did not expressly create a trust, in any technical sense, of which Mr. Twitchell was responsible for. The bylaws did not contain language expressly creating a trust res or expressing the Credit Union's intent to make Mr. Twitchell a trustee. The resulting obligation cannot be turned into a trust by mere implication from the bylaws or because Mr. Twitchell is chargeable as a trustee *ex maleficio*. *See Davis v. Aetna Acceptance Co.*, 293 U.S. at 333, 55 S.Ct. at 153–54.

At best, the bylaws created an implied trust. However, section 523(a)(4) does not exempt defalcations from implied trusts from discharge. *In re Owens*, 54 B.R. 162, 164 (Bankr.D.S.C.1984). This court is of the opinion that the Credit Union did not produce an agreement creating an express or technical trust which imposed trustee responsibilities on Mr. Twitchell.

b. *Statutorily Imposed Trust*

A statutorily imposed trust can place a debtor in a fiduciary capacity. *In re Petersen*, 51 B.R. 486, 488 (Bankr.D.Kan.1985). To show a fiduciary capacity from a statutorily imposed trust for the purposes of section 523(a)(4), a creditor must point to an express legislative intent to create a trust relationship in the statute. *Matter of Campbell*, 79 B.R. 496, 498 (Bankr.M.D. Fla.1987); *In re Meyers*, 52 B.R. 901, 905

(Bankr.E.D.Va.1985); *In re Petersen*, 51 B.R. at 488.[6]

Title 7 of the Utah Code generally regulates financial institutions pursuant to the Financial Institutions Act of 1981. Chapter 9 of Title 7 specifically regulates credit unions. It is clear from these regulations that the Utah legislature recognized that officers of financial institutions, including credit unions, have fiduciary duties to the institution. *See* Utah Code Ann. §§ 7–1–308 (Supp.1983) and 7–9–49 (Supp.1987). Nevertheless, there are no regulations in Title 7 that express a legislative intent to place a credit union officer as a trustee over funds belonging to the credit union.

The case of *In re Meyers, supra,* illustrates the requirement that a statute must state an express intent to create a trust relationship in order to show that a debtor was in a fiduciary capacity within the meaning of 11 U.S.C. § 523(a)(4). The debtors in *Meyers* operated a sporting goods business and sold hunting and fishing licenses for the State of Virginia. Pursuant to Virginia law, the debtors were required to collect and remit all proceeds of sold licenses to the state after deducting commissions. When the debtors' business took a downswing, the debtors applied proceeds from license sales toward business expenses. *Meyers*, 52 B.R. at 903. The Commonwealth of Virginia argued that the debtors' obligation was nondischargeable pursuant to 11 U.S.C. § 523(a)(4) because the debtors stood in a fiduciary relationship to the Commonwealth. *Id.* at 904. The bankruptcy court construed the pertinent Virginia statute as creating an agency relationship rather than an express trust relationship between the parties. *Id.* at 905. Consequently, after further discussion, the court held the obligation to be dischargeable in bankruptcy.

Several cases are instructive regarding the nature of a statutorily imposed trust for the purposes of section 523(a)(4). *See generally, American Ins. Co. v. Lucas*, 41

---

**6.** This court is aware that certain dicta in *In re Black*, 787 F.2d 503, 506 (10th Cir.1986), may imply that as long as a state statute recognizes a fiduciary duty of an officer to a corporation, the officer is in a fiduciary capacity. After a closer analysis of this subject, however, this court believes that Code section 523(a)(4) requires a showing of a fiduciary relationship arising from an express trust.

B.R. 923 (D.W.D.Pa.1984); *In re Meyers,* 52 B.R. 901 (Bankr.E.D.Va.1985); *In re Petersen,* 51 B.R. 486, 488 (Bankr.D.Kan. 1985). After reviewing these cases, it appears that the Credit Union cannot point to a Utah statute that positions Mr. Twitchell as a trustee over the funds of the Credit Union. In the absence of statutory language expressly imposing a trustee status on Mr. Twitchell, the Credit Union cannot show that Mr. Twitchell was acting in a statutory imposed fiduciary capacity.

### Attorney's Fees and Costs

Mr. Twitchell also seeks recovery of attorney's fees and costs expended in defending the dischargeability action. However, the appellant has not directed the court to any specific statute allowing the recovery of attorney's fees and costs for a prevailing debtor in a section 523(a)(4) action.

Code section 523(d) does allow the recovery of attorney's fees and costs when a creditor requests a determination of dischargeability of a consumer debt under section 523(a)(2) and under a narrow set of circumstances. Section 523(d) provides as follows:

> (d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

The legislative history to section 523(d) explains that this provision provides protection to a consumer debtor that dealt honestly with a creditor who sought to have a debt excepted on grounds of falsity in the incurring of the debt. The purpose of the provision is to discourage creditors from initiating frivolous dischargeability actions alleging false financial statements by the debtor. H.R. No. 595, 95th Cong. 1st Sess. 365 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 80 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5963.

The appellant has not briefed the court regarding the applicability of section 523(d) as a basis for the recovery of his attorney's fees and costs. Further, this court has no basis for finding that the Credit Union was not substantially justified in bringing its section 523(a)(2) action and that no special circumstances make the award unjust. Consequently, this court declines to award attorney's fees and costs incurred in defending the dischargeability action to Mr. Twitchell.

### Conclusion

This court finds that the bankruptcy court's opinion that Mr. Twitchell was acting in a fiduciary capacity for the purposes of 11 U.S.C. § 523(a)(4) is incorrect based on existing case law and policy considerations which favor dischargeability. Under the circumstances of this case, no express agreement or statute placed Mr. Twitchell as a trustee over funds belonging to the Credit Union. Because the Credit Union made no showing that Mr. Twitchell was in a "fiduciary capacity" as construed under federal law, Mr. Twitchell's obligation of $20,958.37 is dischargeable in bankruptcy. Further, the appellant is not entitled to attorney's fees and costs.

Accordingly,

IT IS HEREBY ORDERED that the bankruptcy court judgment in regard to the dischargeability of Mr. Twitchell's debt to the Orem Postal Credit Union is REVERSED.