**In re Zachary Lee SHULTZ, Debtor.**

**MIRAMAR RESOURCES, INC., n/k/a Franklin Credit Management Corporation, a Delaware corporation, Plaintiff,**

v.

**Zachary Lee SHULTZ, Defendant.**

**Bankruptcy No. 7–96–10660 MA. Adv. No. 96–1108 M.**

United States Bankruptcy Court, State of New Mexico.

March 3, 1997.

Deborah Rupp Goncalves, Albuquerque, NM, for Miramar Resources, Inc.

Michael A. Roads, Denver, CO.

Forrest R. Carlton, Santa Fe, NM, for debtor.

Michael J. Caplan, Grants, NM, trustee.

## MEMORANDUM OPINION

MARK B. McFEELEY, Chief Judge.

THIS MATTER came before the Court upon the plaintiff's motion for summary judgment declaring the debt resulting from a Colorado bankruptcy court judgment against Zachary Shultz to be nondischargeable. The Court having listened to the arguments of counsel, considered the briefs, reviewed the pleadings and being otherwise fully advised grants the motion. The Court previously announced this decision in an oral ruling and now provides the following memorandum opinion.

## FACTUAL BACKGROUND

Miramar Resources, Inc. is a Delaware corporation. In 1991 Miramar was a publicly-held company that traded on the NASDAQ and had approximately 2000 shareholders and five million shares of stock outstanding. Principal assets of the corporation were oil and gas interests located in Colorado. Until July 23rd of 1991, Zachary Shultz was a director of Miramar. William Shultz, Sr. (Zachary's father), William Shultz, Jr., Jeb Shultz, and Arthur Shultz (Zachary's brothers) were also directors. The five Shultz family members constituted a majority of the eight-person board of directors of Miramar.

During the summer of 1991, the Shultz family members carried out a variety of self-serving transactions involving, among other things, the transfer of Miramar stock, sale of its assets, and relinquishment of control of the corporation. The three Miramar directors who were not members of the Shultz family (Robert Rupert, J. Michael Belanger, and Thomas Axon—the "outside directors") learned of the transactions and ultimately filed lawsuits in both Delaware and Colorado seeking rescission and recovery of the corporate assets. In October of 1991, the outside directors decided the interests of Miramar's creditors and shareholders would best be served by seeking relief under Chapter 11 of the Bankruptcy Code. A petition was filed in the District of Colorado.

One of the adversary actions filed in the Chapter 11 case was captioned *Miramar Resources, Inc., v. Dominion Investment Limited et al.* Zachary Shultz was a named defendant in the case, which was heard by the Honorable Sidney B. Brooks for the District of Colorado on September 8, 1993. Zachary Shultz did not appear. Following the trial, Judge Brooks entered findings of fact, conclusions of law, and an order in which he found by clear and convincing evidence that Zachary Shultz and others had breached their fiduciary duties to Miramar. Judgment was entered awarding Miramar over one million dollars.

On February 16, 1996, Zachary Shultz sought Chapter 7 relief in this Court. Miramar then filed an adversary complaint seek-

ing a determination that the debt resulting from the Colorado bankruptcy court judgment was nondischargeable pursuant to § 523(a)(4) and/or § 523(a)(6) of the Bankruptcy Code. Miramar has now moved for summary judgment on the grounds that this Court is bound by the doctrine of collateral estoppel to give full faith and credit to Judge Brooks' findings of fact and conclusions of law in which Zachary Shultz was held to have breached his fiduciary duty to the corporation.

## DISCUSSION

■ Collateral estoppel, or issue preclusion, precludes relitigation of any issues of fact or law that were actually litigated and necessarily decided in a prior proceeding. Collateral estoppel is binding upon the bankruptcy court and precludes relitigation of factual issues if (1) the issue to be precluded is the same as the one litigated in the earlier proceeding; (2) the issue was actually litigated in the prior proceeding; and (3) the court's determination of that issue was necessary to the resulting final and valid judgment. *In re Wallace*, 840 F.2d 762 (10th Cir.1988); *In re Tsamasfyros*, 940 F.2d 605 (10th Cir.1991); *In re Pattison*, 132 B.R. 449 (Bankr.D.N.M.1991). Shultz contends that collateral estoppel should not apply because the issues determined in the Colorado bankruptcy court proceeding are not the same as the issues arising under § 523(a)(4). Defalcation by a fiduciary under § 523(a)(4) requires something more than a breach of a general fiduciary obligation imposed by state law. *In re Evans*, 161 B.R. 474 (9th Cir. BAP1993).

■ It is true that federal law narrows the scope of the fiduciary relationship which must exist to satisfy the requirements for nondischargeability under § 523(a)(4). It is also true that Judge Brooks was not faced with a complaint for nondischargeability and therefore did not analyze the evidence of a fiduciary relationship between Shultz and Miramar under the lens of § 523(a)(4). These two facts do not automatically lead to the conclusion urged by Shultz, *ie.* that collateral estoppel does not apply and summary judgment must be denied.

■ In the case of *In re Young*, 91 F.3d 1367 (10th Cir.1996), the Tenth Circuit Court of Appeals held that a bankruptcy court's factual findings relating to the issue of fiduciary duty were sufficient to make a determination as to whether or not, as a matter of law, § 523(a)(4) was satisfied. A determination of the existence of a fiduciary duty, for purposes of the discharge exception for fraud or defalcation while acting in a fiduciary capacity, is a legal conclusion, rather than a factual finding. Whether a debtor acted with the requisite fiduciary capacity under the discharge exception for fraud or defalcation while acting in a fiduciary capacity is a question of federal law. *Matter of Stentz*, 197 B.R. 966 (Bankr.D.Neb.1996); *In re Schulman*, 196 B.R. 688 (Bankr.S.D.N.Y.1996); *In re Volpert*, 175 B.R. 247 (Bankr.N.D.Ill.1994); *Meyer v. Rigdon*, 36 F.3d 1375 (7th Cir. 1994). Thus, regardless of whether Judge Brooks specifically concluded that Shultz owed Miramar a fiduciary duty which satisfies § 523(a)(4), so long as factual findings were made which permit that determination, this Court is bound by those findings and is barred from proceeding with relitigation of the same facts.

■ Judge Brooks' order includes 33 single-spaced pages comprising 81 separate findings which detail the events and relationships upon which the breach of fiduciary duty and corresponding award of damages are based. The Court holds that these findings are binding upon this Court and are sufficient to allow a determination of the nature of any fiduciary duty owed to Miramar by Shultz and whether that duty satisfies the requirements of § 523(a)(4).

■ A review and analysis of federal law setting forth the requirements of a fiduciary under § 523(a)(4) is appropriate. Clearly, neither a general fiduciary duty of confidence, trust, loyalty, and good faith nor an inequality between parties' knowledge or bargaining power is sufficient to establish a fiduciary relationship for the purposes of dischargeability. *In re Young*, 91 F.3d 1367 (10th Cir.1996). The requirements of a fiduciary relationship under § 523(a)(4) are narrower, a limitation which has a long history.

As the Supreme Court noted more than 60 years ago:

> The meaning of these words has been fixed by judicial construction for very nearly a century ... [T]he statute "speaks of technical trusts, not those which the law implies from the contract." .. It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex maleficio*. He must have been a trustee before the wrong and without reference thereto ... "The language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created." *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934) (citations omitted).

In *Davis* the Supreme Court refers to the necessity of a technical trust. The reference to a technical trust, however, is made within the context of the full rationale for the decision. The justification for requiring some sort of express or technical trust, according to the Supreme Court, is to prevent the imposition of the fiduciary relationship retroactively by means of an equitable, constructive, or implied-at-law trust. The wrongful act cannot, in itself, generate the case for the existence of a fiduciary relationship.

Most of the cases which have evolved from *Davis* (both before and after the enactment of the Bankruptcy Code), while including the reference to an express or technical trust, also retain language clarifying the basis for that requirement. These cases explain that the express or technical trust is required *as opposed to* a trust implied-at-law and emphasize that the fiduciary relationship must have existed prior to the act which caused the debt. For example:

*In re Dempster*, 182 B.R. 790 (Bankr. N.D.Ill.1995)—To establish a discharge exception for fraud or defalcation while acting in a fiduciary capacity, the moving party must show the following: (1) the existence of an express trust or fiduciary relations of any quality that justify the imposition on the fiduciary of a special duty, basically to treat his principal's affairs with all the solicitude that he would accord his own affairs; (2) the

debt was caused by the debtor's fraud or defalcation; and (3) the debtor acted as fiduciary at the time the debt was created.

*In re Casey*, 181 B.R. 763 (Bankr.S.D.N.Y. 1995)—For purposes of the exception to discharge for fraud or defalcation while acting in a fiduciary capacity, "fiduciary capacity" is narrowly construed to include only relationships arising out of express or technical trusts, or statutorily imposed trusts; it does not extend to constructive, implied, or resulting trusts, and the trust relationship must predate and exist apart from the act from which underlying indebtedness arose.

*In re Howell*, 178 B.R. 730 (Bankr. W.D.Tenn.1995)—To except a debt from discharge as one for money obtained by the debtor's fraud or defalcation while acting in a fiduciary capacity, a creditor must first prove that the fiduciary relationship existed between the parties, and must then demonstrate that fraud or defalcation occurred while the fiduciary relationship existed.

*Johnson v. Woldman*, 158 B.R. 992 (Bankr.N.D.Ill.1993)—A fiduciary relationship may be found to have existed between a debtor and a nondischargeability complainant only if the complainant can demonstrate the existence of some express or technical trust, which existed prior to the act creating the debt and without reference to that act. *See also: In re Chavez*, 140 B.R. 413 (W.D.Tex. 1992).

The fiduciary relationship under scrutiny in the present case is between Miramar Resources, Inc. and Shultz, a member of the board of directors of Miramar at the time the subject transactions occurred. (Finding # 8—Judge Brooks' Findings of Fact and Conclusions of Law). Numerous cases have considered whether the obligation of a director to his corporation falls within the definition of fiduciary duty under § 523(a)(4).

The court in *In re Jones*, 114 B.R. 917 (Bankr.N.D.Ohio 1990) held that a corporate officer is a "fiduciary of the corporation" for purposes of the exception to discharge for fraud or defalcation while acting in fiduciary capacity. In that case, the debtor was president, treasurer, chairman of the board of directors, shareholder and primary employee

of the corporation in which a creditor, who had guaranteed the corporation's debts, was also a director and shareholder. Through the creditor's assistance, the debtor was able to obtain equipment of substantial value for the corporation, and the court held that the creditor's noninvolvement in the operation of the business imposed obligations on the debtor to perform specific duties to protect the creditor's investment.

Another case, *In re Galbreath,* 112 B.R. 892 (Bankr.S.D.Ohio 1990), also found a director's obligation to the corporation was nondischargeable as one arising out of fraud or defalcation while acting in a fiduciary capacity. The debtor/director had induced the corporation to make a loan on the basis of various self-serving misrepresentations and also withheld information about outstanding liens, taxes, options, and HUD moratoriums which adversely affected the alleged project being funded.

And in *Medus v. Perry,* 171 B.R. 961 (Bankr.E.D.La.1994), a corporate officer-shareholder's debt to other shareholders, for his unauthorized borrowing in the corporate name and his pledge of corporate assets in order to obtain funds to satisfy his own share of capitalization requirements, was excepted from discharge in Chapter 7 as one for money obtained by officer-shareholder's "defalcation while acting in a fiduciary capacity." *Id.* at 967.

The court in *In re Specialty Plastics, Inc.,* 113 B.R. 915 (Bankr.W.D.Penn.1990), similarly found that by virtue of his status as director of a corporate Chapter 11 debtor, an individual Chapter 11 debtor was a "fiduciary" of the corporate debtor for purposes of the provision in the Bankruptcy Code rendering nondischargeable debt arising from fraud or defalcation while acting in a fiduciary capacity.

According to *In re Cummins,* 166 B.R. 338 (Bankr.W.D.Ark.1994), one way of establishing fiduciary capacity for purposes of the discharge exception of the Bankruptcy Code, is where there is a clear fiduciary duty on the part of corporate officers to their corporation with regard to proper treatment of corporate assets over which the corporate officers have control.

The Court notes that some cases have found the fiduciary duty of a director to a corporation is insufficient for nondischargeability purposes. Prominent in this category is *In re Twitchell,* 91 B.R. 961 (D.Utah 1988). Reversing the decision of the bankruptcy court, the United States District Court for the District of Utah found that the debtor, as president and treasurer of a Utah credit union, was not acting in a fiduciary capacity such that his defalcations would give rise to nondischargeable debts. Twitchell owed the credit union money for his failure to apply proceeds from the sale of his home to satisfy a loan obligation, his unauthorized payment of payroll checks, his failure to withhold payroll taxes, his improper approval of a loan to himself, and his unauthorized release of a lien on his own property. The *Twitchell* court acknowledged that "a few cases hold that a debt due to a breach of a fiduciary duty by a corporate or bank officer is not dischargeable." *Twitchell* at 965. However, following a review of historical cases addressing the dischargeability exception for defalcation while in a fiduciary capacity, the court focused on the necessity for an express trust, which it found should include "(1) sufficient words to create a trust, (2) a clearly defined trust res, and (3) an intent to create a trust relationship." *Id.* Even though bylaws of the credit union gave Twitchell charge of the cash, securities, and other valuable papers of the credit union, the court found this insufficient because the bylaws "did not expressly create a trust, in any technical sense ...". *Twitchell* at 966. The *Twitchell* decision was reversed by the 10th Circuit Court of Appeals in a decision without an accompanying opinion. *In re Twitchell,* 892 F.2d 86 (10th Cir.1989). Since the issue of fiduciary capacity in a dischargeability action was paramount in the case, the Court is satisfied that the earlier holding by the District Court is not sound precedent. The court in *In re Hutton,* 117 B.R. 1009 (Bankr.N.D.Okl.1990) also held that the fiduciary duty owed by an officer and director of a corporation to the corporation and its stockholders was insufficient to satisfy the requirements of § 523(a)(4). The *Hutton* opinion, which re-

lies heavily on *Twitchell,* is also called into doubt.

■ The Court finds the reasoning of the court in *In re Snyder,* 101 B.R. 822 (Bankr. D.Mass.1989), to be particularly persuasive. The case involved an adversary proceeding seeking the determination that certain debts were nondischargeable in the Chapter 7 case of a corporate director of a closely-held corporation. The debtor in that case had assigned a corporate mortgage to his own son and had retained proceeds from corporate rental property, among other things. After an analysis of the various interpretations of the "technical trust" requirement, Judge Gabriel found "the operative language of § 523(a)(4) for corporate directors to be, not the requirement of a technical trust, but the requirement that [§ 523(a)(4) ] only applies to a debt created by a person who was already a fiduciary at the time the debt was created." *Snyder* at 835. This Court agrees and holds that § 523(a)(4) is satisfied where there is found to exist between the parties a preexisting fiduciary relationship which imposed upon one party responsibility for and control of assets or property in which the complaining party holds an interest.

■ Having analyzed the nature of the requirements of § 523(a)(4) under federal law, the Court now turns to state law to investigate whether those requirements are met in the relationship between Schultz and Miramar. State law or nonbankruptcy substantive law may be considered when making a determination under the discharge exception for fiduciary fraud or defalcation and may itself give rise to a fiduciary relationship or obligation. *In re Eisenberg,* 189 B.R. 725 (Bankr.E.D.Wis.1995). Although the concept of "fiduciary" under the exception for discharge for fraud or defalcation while acting in a fiduciary capacity is a narrowly-defined term under federal law, the court should consider applicable state law to determine whether express or technical trust relationships exist. *In re Johns,* 181 B.R. 965 (Bankr.D.Ariz.1995). For purposes of the discharge exception for fraud or defalcation while acting in a fiduciary capacity, the federal definition of fiduciary controls, but state law determines whether a trust was created.

*In re Waskew,* 191 B.R. 34 (Bankr.S.D.N.Y. 1995); *In re Barrett,* 156 B.R. 529 (Bankr.N.D.Texas 1993). *See also: In re Penick,* 199 B.R. 16 (Bankr.E.D.Ky.1996); *In re Mason,* 191 B.R. 50 (Bankr.S.D.N.Y.1996); *In re Young,* 91 F.3d 1367 (10th Cir.1996); *In re Kaczynski,* 188 B.R. 770 (Bankr.D.N.J. 1995); *In re Specialty Plastics, Inc.,* 113 B.R. 915 (W.D.Penn.1990).

Miramar is a Delaware corporation, and the Court will review Delaware law to ascertain whether a basis exists for finding Shultz's status as a director of Miramar imposed a fiduciary obligation sufficient to meet the strictures of § 523(a)(4).

Title 8 of the Delaware Code at § 141(a) provides that "[t]he business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors ...," thus affirming the general presumption that directors of corporations control the assets. The Delaware Code also makes specific reference to the fiduciary duty owed by directors to a corporation in Title 8, § 102(b)(7), which provides that the certificate of incorporation may contain a provision "eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director...." These two statutory provisions, taken together, supply a reasonable basis for concluding that under Delaware law, a corporate director is considered to act in a fiduciary capacity with respect to his corporation.

■ Delaware common law confirms this supposition. Historically, Delaware courts have held corporate directors to high fiduciary standards and have even described the fiduciary obligation in terms of a trust. Directors of a corporation are spoken of as its trustees; their acts are scanned in the light of those principles which define the relationship existing between a trustee and a *cestui que trust.* *Bowen v. Imperial Theatres, Inc.,* 13 Del.Ch. 120, 115 A. 918 (1922). The law imposes upon the directors the duty of disposing of the shares in the interest of the corporation; the manner in which they perform that duty must meet the exacting

standards required of a fiduciary acting in an office of trust and confidence. *Canall v. Burbage*, 14 Del.Ch. 55, 121 A. 646 (1923). Control and management of corporations rest in the officers and board of directors ... while the corporation is the owner of the assets, yet their control and management rest in the officers and directors, whose relation to the assets is one of fiduciary character. *Harden v. Eastern States Public Service Co.*, 14 Del.Ch. 156, 122 A. 705 (1923).

■ More recent cases are in accord. Directors of a corporation stand in the position of trustees with their stockholders. *Petty v. Penntech Papers, Inc.*, 347 A.2d 140 (Del.Ch.1975). The existence and exercise of the statutory power of directors, rather than shareholders, to manage the business and affairs of a corporation carries with it certain fundamental fiduciary obligations to the corporation and its shareholders. (citing to 8 Del.C. § 141(a)). *Aronson v. Lewis*, 473 A.2d 805 (Del.Supr.1984). Directors of a corporation stand in fiduciary relation to its shareholders. *Penn Mart Realty Co. v. Becker*, 298 A.2d 349 (Del.Ch.1972). A director stands in a fiduciary relationship to a corporation and its stockholders. *Wilderman v. Wilderman*, 315 A.2d 610 (Del.Ch. 1974). Directors, in the ordinary course of their service as directors, do not act as agents of the corporation; it would be an analytical anomaly to treat corporate directors as agents of the corporation when they are acting as fiduciaries of the stockholders in managing the business and affairs of the corporation. *Arnold v. Society for Savs. Bancorp. Inc.*, 678 A.2d 533 (Del. Supr.1996).

■ Based on Delaware statutes and common law, the Court finds Shultz, as a director of Miramar, was under a fiduciary obligation to the corporation for the management of the corporation and its assets, which can be considered to constitute the *res* of a technical trust. The Court further finds that Shultz was acting in his preexisting fiduciary capacity at the time of the transactions which constituted the breach, and the requirements of § 523(a)(4) are satisfied. No dispute has been raised regarding the issue of breach; Judge Brooks' conclusions of law # 91 and # 93 establish the existence of the breach by clear and convincing evidence.

■ Shultz has also attacked Miramar's collateral estoppel argument on the grounds that because Shultz did not appear at the trial, the fiduciary duty issue has not been "actually litigated". This position is without merit. In dischargeability proceedings, a bankruptcy court must give collateral estoppel effect to all issues that were actually litigated and necessary to a resulting final and valid judgment and **for which the defendant had a full and fair opportunity to present his case.** *In re Dunston,* 146 B.R. 269 (Bankr.D.Colo.1992) (emphasis added). Shultz' decision to forego participating in the trial does not negate his opportunity to do so, and there is no evidence in the record nor any assertion made that Shultz did not have the opportunity to appear.

The Court is aware the question decided here has previously been addressed in two other districts, with inconsistent results. Miramar brought similar adversary proceedings for nondischargeability under § 523(a)(4) in the personal bankruptcies of Arthur Shultz, filed in Florida, and of William Shultz, Sr., filed in Texas. In both cases Miramar also filed motions for summary judgment on the basis of collateral estoppel. Judge John C. Akard of the Northern District of Texas granted summary judgment. (unpublished Memorandum of Opinion on Non-dischargeability of Judgment; *Miramar Resources, Inc. v. William Butler Shultz, Sr.,* Adv. No. 296–2020—United States Bankruptcy Court for the Northern District of Texas, Amarillo Division). Judge Jerry A. Funk of the Middle District of Florida denied Miramar's motion for summary judgment on the grounds that the issues raised under § 523(a)(4) were not identical to the issues facing Judge Brooks in Colorado. (unpublished Order Denying Motion for Summary Judgment; *Miramar Resources, Inc. v. Arthur Christopher Shultz,* Adv. No. 96–313—United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division).

Judge Funk based his decision on Judge Brooks' failure to include, as a conclusion of

law, the existence of an express or technical trust. However, Judge Funk made no attempt to determine if, based on the facts found by Judge Brooks, he could conclude as a matter of law that the debtor had breached a fiduciary duty such that summary judgment was appropriate. He recognized that such a determination was possible, because he cited and relied upon a case in which the determination of nondischargeability was made on just such a basis. Quoting from his order at page 5:

> In order to find a fiduciary duty as required by Section 523(a)(4), "an express or technical trust" must exist giving rise to the fiduciary duty. *Wright v. Menendez (In re Menendez)*, 107 B.R. 789, 791 (Bankr.S.D.Fla.1989) (quoting *Davis v. Aetna Acceptance Corp.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934)). A state statute can supply such a fiduciary duty. *Id.* In *Wright v. Menendez,* the court found that a fiduciary duty sufficient for the § 523(a)(4) discharge exception did not exist merely due to the debtors' positions as officers and directors of a corporation, but instead found the express technical trust requirement fulfilled by Florida Statute § 607.301 which holds that directors of a corporation at the time of dissolution constitute a board of trustees for any property owned or acquired by the dissolved corporation. *Id.* at 791–92. This trustee position fulfilled the requirement of an express or technical trust that gives rise to a fiduciary duty sufficient for § 523(a)(4) discharge exception. *Id.* at 792.

Using the same process of analysis, we have interpreted Judge Brooks' findings of fact according to Delaware statutes and common law to determine that this debt is nondischargeable.

### CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of Miramar, Inc. and finds Zachary Shultz' debt to Miramar arising from the damages awarded in *Miramar Resources, Inc., v. Dominion Investment Limited et al.* is nondischargeable. This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. An appropriate judgment will follow.

### SUMMARY JUDGMENT

IN ACCORDANCE with the Memorandum Opinion entered herewith, the Court hereby grants summary judgment in favor of Miramar, Inc. and declares Zachary Shultz' debt to Miramar arising from the damages awarded in *Miramar Resources, Inc., v. Dominion Investment Limited et al.* to be nondischargeable.