409 F.Supp. 743 (1975)
In re MORRIS KETCHUM, JR. AND ASSOCIATES, Bankrupt.
CLARKE & RAPUANO, INC., Plaintiff,
v.
MORRIS KETCHUM, JR. AND ASSOCIATES, Defendant.
In re Morris KETCHUM, Jr., Bankrupt.
CLARKE & RAPUANO, INC., Plaintiff,
v.
Morris KETCHUM, Jr., Defendant.
Bankruptcy Nos. 74 B 1237, 74 B 1236.
United States District Court, S. D. New York.
December 12, 1975.
*744 Spitzer & Feldman, Ronald J. Offenkrantz, Kenneth Gliedman, New York City, for Clarke & Rapuano, Inc.
Whitman & Ransom, New York City, for Morris Ketchum, Jr. and Morris Ketchum, Jr. and Associates; Irwin Finkelstein, New York City, of counsel.

MEMORANDUM DECISION
GAGLIARDI, District Judge.
This case arises out of two applications by plaintiff Clarke & Rapuano, Inc. ("C&R") in the Bankruptcy Court for a determination of the dischargeability of certain debts owed to it by the bankrupts-defendants Morris Ketchum, Jr. and Morris Ketchum, Jr. and Associates ("Ketchum").[*]
According to C&R, Ketchum entered into a contract with the New York Zoological Society ("Zoo") for the performance of certain architectural, engineering, and landscape architectural services in connection with the development of a Zoo exhibit. Ketchum then subcontracted some of the work to C&R and this work was performed in full.
C&R claims that during 1974 the defendants received payments from the Zoo upon the representation that the subcontractor, C&R, had substantially completed all of its work and that the payments would be transmitted to the subcontractor. No such payments were ever made or tendered by the defendants. On August 30, 1974 Ketchum was adjudged bankrupt. C&R timely filed its applications to determine the dischargeability of the debts owed to it by the defendants; the applications were dismissed[**] and the debts declared dischargeable by the Bankruptcy Court. Appeal was taken to this court.
Plaintiff contends that the debts are not dischargeable under Sections 17(a)(2) and 17(a)(4) of the Bankruptcy Act, 11 U.S.C. §§ 35(a)(2), (4), which provide that:
A discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except such as . . .
(2) are liabilities for obtaining money or property by false pretenses or false representations, . . . or for wilful and malicious conversion of the property of another . . . or . . .
(4) were created by his fraud, embezzlement, misappropriation, or defalcation *745 while acting as an officer or in any fiduciary capacity
The Bankruptcy Court rejected these contentions. This court concludes that under § 17(a)(4) the debt is not dischargeable and reverses the decision of the Bankruptcy Court; the court therefore, does not reach the other issues raised.
The non-dischargeability of the instant debt arises out of the interaction of § 17(a)(4), supra, and Article 3-A of the New York Lien Law which provides that funds "received by a contractor under or in connection with a contract for an improvement of real property . . . constitute assets of a trust," New York Lien Law § 70(1) (McKinney 1966), "for payment of claims of subcontractors . . .," New York Lien Law § 71(2)(a). Thus, the money allegedly received by Ketchum from the Zoo was held in trust for C&R and use of these funds for purposes other than payment to the subcontractor or toward other claims permitted by Article 3-A resulted in a debt "created by his embezzlement, misappropriation, or defalcation while acting in a fiduciary capacity" which is not dischargeable.
Defendants contend that § 17(a)(4) is inapplicable to the instant case as the debt was not "created" by the breach of fiduciary duty. Rather, they claim, the liability of the defendants was grounded in a contract between it and C&R. Ketchum argues, as the Bankruptcy Court concluded, that the New York Lien Law provided another remedy but not a new debt. In support of this position, defendants rely on Upshur v. Briscoe, 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1890) and Bloomingdale v. Dreher, 31 F.2d 93 (3d Cir. 1929) which contain language to the effect that "section 17(a)(4) applies only to debts created by a person who was already a fiduciary when the debt was created," Id. at 94.
An analysis of the facts and holdings of these two cases, however, indicates that the rules enunciated there are not dispositive of the instant matter.
In Upshur v. Briscoe the plaintiff alleged that her former husband had given the defendant's predecessor in interest the sum of $10,000 and the donee had agreed to pay plaintiff $700 annually. The donee subsequently was adjudged bankrupt. The court held that notwithstanding certain agreements which recited that the donee accepted the "trust" and that the plaintiff accepted the donee as her "trustee" the real relationship between the donee and the plaintiff was one of debtor-creditor. This was evidenced by the fact that the donee was permitted to use the money in any way he thought proper, was not required to keep the money separate from his other holdings, and agreed to pay "interest" of $700 per year. 138 U.S. at 375, 11 S.Ct. at 316, 34 L.Ed. at 934. Thus, the debt was not founded in fiduciary breach as there was no fiduciary relationship and was not barred from discharge under § 17(a)(4).
In Bloomingdale v. Dreher, the bankrupt had borrowed money from Bloomingdale in order to finance the purchase of automobiles for his dealership business. The dealer executed a note for the amount of money advanced by Bloomingdale, transferred all title and interest in the cars to Bloomingdale, and executed a "trust receipt" for the vehicles. Here, too, the Court held that "the transaction was one of borrowing and lending money, which created a debt, evidenced by a note . . . . That debt did not arise out of any fiduciary relations." 31 F.2d at 94-95.
Similarly, under the rules of Upshur and Bloomingdale a debt would not be considered to be created by a breach of fiduciary duty if the very act of wrongdoing out of which the debt arose imposed a trust ex maleficio. 1A Collier on Bankruptcy § 1708[4] at 1708 (14th ed. 1974).
The instant case, however, is wholly distinguishable. Here, to be sure, until the defendant obtained payment from the Zoo he was liable to the plaintiff solely on the basis of the contract *746 between them. Had no payment ever been received from the Zoo, this would not have affected the rights of C&R which would have still been entitled to its payment. Conversely, if the discharge in bankruptcy had been granted at this point, C&R's rights would have been extinguished.
Once the defendant took affirmative steps to secure funds from the Zoo, however, he took on new obligations with respect to C&R. He was now a trustee of particular funds which New York law required him to pay to subcontractors; he was prohibited from commingling the trust funds, Caristo Construction Corp. v. Diners Financial Corp., 21 N.Y.2d 507, 511, 236 N.E.2d 461, 289 N.Y.S.2d 175 (1968); and, under New York Lien Law § 79-a(1)(b) was obliged to turn these funds over to the subcontractor within thirty-one days of the date they were received. Failure to do so may have constituted a larceny. New York Lien Law § 79-a(1).
The defendant chose to solicit payment from the Zoo presumably because he intended to apply any monies left after payment of subcontractors to his own account. He had the right to do so. However, together with this right, the law imposed on him new fiduciary responsibilities which were in addition to and independent of his liabilities under the contract with C&R. By not paying these monies within thirty-one days he breached his statutory fiduciary duties, and this breach created an independent liability to the plaintiff which was not dischargeable in bankruptcy under § 17(a)(4). Matter of Flam, Nos. 73B 1002, 1003 (S.D.N.Y. May 31, 1974).
The policy of the Bankruptcy Act is to grant to an "honest debtor" a new financial life. Bruning v. United States, 376 U.S. 358, 361, 84 S.Ct. 906, 908, 11 L.Ed.2d 772, 775 (1964). Here, the defendant allegedly secured funds which under state law were to be turned over to the plaintiff, diverted these funds to his own use, and thereby may have committed a larceny. The liability arising from these acts is not covered by the discharge provisions of the Bankruptcy Act.
Accordingly, the decision of the Bankruptcy Court is reversed and the case remanded for appropriate orders concerning discovery, consideration of the merits of plaintiff's allegations, and other proceedings consistent with this opinion.
So Ordered.
NOTES
[*] Both applications arise out of the same transactions and, aside from the captions, the papers submitted in both matters are identical. This court  following the practice of the Bankruptcy Court and the parties  will treat both applications as a single unit.
[**] Under Bankruptcy Rule 409 the applications were treated as complaints and dismissed upon motion of the defendants pursuant to Fed.R.Civ.P. 12(b)(6). Bankruptcy Rules 703, 712(b).