In re Oviedo T. MENENDEZ and Gladys Menendez, Debtors.

Robert T. WRIGHT, Jr., as Trustee, Plaintiff,

v.

Oviedo T. MENENDEZ and Gladys F. Menendez, Defendants.

Bankruptcy No. 89–13394–BKC–SMW. Adv. No. 89–0480–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

Dec. 1, 1989.

Lynn M. Harris, Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, Fla., for plaintiff.

Edward Waldron, Coral Gables, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came before the Court on November 14, 1989 upon a complaint to determine the dischargeability of a debt filed by plaintiff, Robert T. Wright, Jr., as trustee for Mershon, Sawyer, Johnston, Dunwody & Cole ("Trustee Wright") against the debtors Oviedo T. Menendez and Gladys F. Menendez, his wife (the "debtors"). The Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law.

This is an adversary proceeding brought pursuant to 11 U.S.C. § 523(a)(4) to except from discharge the debt owed by defendants to plaintiffs. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b). The Court finds that the subject matter of the complaint is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

The facts giving rise to the complaint are largely undisputed. In March, 1981 the debtors acquired all of the outstanding stock of Waterway Estates, Inc. ("Waterway"). The debtors were the only officers, directors and shareholders of Waterway from March, 1981 until the corporation was dissolved in 1985. Waterway's only asset was a parcel of real estate (the "Cocoplum property"). The primary purpose of Waterway was to build a residence on the Cocoplum property in which the debtors intended to reside. The construction of the house was funded by a loan from Ocean Bank which held a first mortgage on the Cocoplum property.

On December 1, 1981, David Topp instituted a state court lawsuit against Arvida Corporation and other defendants in Dade County, Florida (the "Topp case"). As part of Arvida's response to the Topp complaint, Arvida asserted a crossclaim and filed a third party complaint against Waterway seeking indemnification from Waterway for any loss Arvida might suffer as a result of Topp's claims. On April 26, 1985, the Topp court found in favor of Arvida on Arvida's indemnity claims against Waterway for a total amount of $72,365.52 plus interest, costs and reasonable attorneys' fees. Subsequently, the Topp court ordered Waterway to indemnify Arvida for costs totaling $2,266.04 and attorneys' fees totaling $39,000.00.

In April of 1985 debtor Oviedo Menendez entered into a business venture with his brother-in-law, Jose Vazquez Blanco to construct a housing development in Venezuela. In connection with the business transaction, on April 22, 1985 a "Joint Venture Agreement" was executed by debtor Oviedo Menendez in his individual capacity. The terms of the joint venture agreement provided that Mr. Menendez would receive a 50% interest in the investment and the proceeds derived therefrom in exchange for his promise to pay $500,000.00 to Mr. Blanco as his initial contribution. At the time of the transaction Mr. Menendez did not have $500,000.00 to contribute and Mr. Blanco agreed to lend that sum to Mr. Menendez. To provide security for Mr. Menendez's personal obligation to Mr. Blanco, on May 1, 1985 the debtors, as officers of Waterway, caused a second mortgage to be placed on Waterway's primary asset, the Cocoplum property. In 1987, the housing development venture began experiencing financial difficulties and

subsequently failed leaving Mr. Menendez liable to Mr. Blanco for $500,000.00.

On or about September 9, 1985, the debtors caused Waterway to be dissolved. Although the Articles of Dissolution represented that all obligations of Waterway were paid, the judgment debt to Arvida remained unsatisfied. On October 9, 1985, Oviedo Menendez conveyed title to the Cocoplum property by quit claim deed from Waterway to himself and Gladys Menendez, individually.

Subsequently, on September 4, 1987, the debtors conveyed title to the Cocoplum property by general warranty deed to the Timon Corporation, for $850,000.00. As a result of the sale of the Cocoplum property to Timon Corporation, Inc., Mr. Blanco received $175,000.00 and released his mortgage. The debtors received $75,000.00. The debtors did not utilize the $75,000.00 to satisfy the debts due to Waterway's creditors, but instead, satisfied their own personal obligations.

On June 23, 1988 Arvida assigned to Arvida/JMB Partners all of Arvida's right title and interest in the judgments and orders entered against Waterway and in favor of Arvida in the Topp case. On September 30, 1988, Arvida/JMB Partners assigned its interest in the judgments to the law firm of Mershon, Sawyer, Johnston, Dunwody & Cole ("Mershon") for which Wright is acting as trustee.

On July 7, 1989 Oviedo T. Menendez and Gladys F. Menendez, his wife, filed a voluntary petition for relief under Chapter 7 of Title 11 of the Bankruptcy Code. Trustee Wright filed this adversary complaint on October 13, 1989 seeking a determination of the dischargeability of the debt owed to Mershon, Sawyer, Johnston, Dunwody & Cole by the debtors.

The Court finds that pursuant to 11 U.S.C. § 523(a)(4) that the debtors committed fraud or defalcation while acting in a fiduciary duty and therefore the debt to Trustee Wright is nondischargeable. To except an obligation from discharge under 11 U.S.C. § 523(a)(4) a plaintiff must prove:

a. that the debtors were acting in a fiduciary capacity;

b. that while acting in the fiduciary capacity they committed fraud or defalcation;

c. the fraud or defalcations must occur subsequent to the creation of the fiduciary capacity and without reference thereto. *Kimmle v. Cramer (In re Cramer)*, 93 B.R. 764, 767 (Bankr.M.D. Fla.1988).

The Court finds the above-stated elements to be present in the instant case as explained in the following legal discussion.

■ Section 523(a)(4) provides that a debtor will not be discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity...." In interpreting the language of 11 U.S.C. § 523(a)(4), courts have held that the fiduciary capacity must arise from an "express or technical trust." *Davis v. Aetna Acceptance Corp.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934).

This court has previously held that "[i]n defining 'fiduciary capacity' as it applies to § 523(a)(4) ... a state statute can create the necessary fiduciary status." *Federal Ins. Co. v. Feldman (In re Feldman)*, 85 B.R. 163, 164 (Bankr.S.D.Fla.1988). *See also, Intercontinental Life Ins. Co. v. Good (In the Matter of Good)*, 33 B.R. 163 (Bankr.M.D.Fla.1983). In *Feldman*, this court found that the Florida statute governing the handling of insurance premiums collected by an agent from insureds creates the "express or technical" trust required by 11 U.S.C. § 523(a)(4). 85 B.R. at 164.

The Court finds that Section 607.301 of the Florida Statutes creates the necessary "express or technical" trust required in an action under 11 U.S.C. § 523(a)(4). Fla. Stat. § 607.301 provides in pertinent part:

1. The directors of the corporation at the time of its dissolution shall thereafter be and constitute a board of trustees for any property owned or acquired by the dissolved corporation....

2. ... If the trustees of any dissolved corporation learn that the corporation continues to own any property or interest therein, the trustees shall apply the

property or interest therein to the payment of any corporate debts, liabilities, or obligations known to them. . . .

3. The trustees shall continue as trustees of the property of the dissolved corporation so long as it holds of record in, to, or upon real property or for a period of three years after dissolution, whichever shall be longer. . . .

This statute specifically provides for the creation of a trust with a res consisting of the dissolved corporation's property or proceeds derived therefrom and imposes a duty upon the trustees to distribute the proceeds of the corporate assets to the creditors of the corporation.

■ The debtors argue that Fla.Stat. § 607.301 does not create an express or technical trust pursuant to 11 U.S.C. § 523(a)(4) in that the statute does not specifically require the segregation of funds into a trust account. The Court finds no merit in this argument for two reasons. First, segregation of the funds is not a mandatory element for an express trust to exist. *Ford Motor Credit Co. v. Hickey, (In re Hickey)*, 41 B.R. 601 (Bankr.S.D.Fla. 1984). Second, even if segregation of the trust assets was required, Fla.Stat. § 607.301 specifies that after dissolution of a corporation any corporate assets remaining are to be held by the trustees for distribution to creditors. Although the language of the statute does not include the word "segregation," the language contemplates a trust consisting solely of property of the dissolved corporation. Therefore, the Court finds that the statutory trust created by Fla.Stat. § 607.301 fulfills the requirement under 11 U.S.C. § 523(a)(4) that there be an "express or technical" trust creating the fiduciary capacity.

The second element of an 11 U.S.C. § 523(a)(4) action that the debtors must have committed a fraud or defalcation is also satisfied. This Court has determined that "[d]efalcation is the slightest misconduct and it need not be intentional conduct; negligence or ignorance may be 'defalcation'." *Morales v. Codias (In re Codias)*, 78 B.R. 344, 346 (Bankr.S.D.Fla.1987). The Sixth Circuit has held that "creating a debt by breaching a fiduciary duty is a sufficiently bad act to invoke Section 17(a)(4) exception even without a known subjective mental state evidencing intent to breach a known fiduciary duty or bad faith in doing so." *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249 (6th Cir. 1982). *See also Carey Lumber Co. v. Bell*, 615 F.2d 370, 376 (5th Cir.1980). Additionally, where a debtor misuses "his position to gain a personal benefit at the expense of the corporation or corporate creditors" thereby breaching a fiduciary duty, such acts have been found to constitute defalcation. *See, e.g., Maguire v. Herzog*, 421 F.2d 419, 422 (5th Cir.1970).

■ The acts committed by the debtors in the instant case give rise to a finding that they committed fraud or defalcation while acting in a fiduciary capacity. Upon dissolution of Waterway, the debtors became trustees, by virtue of their status as corporate officers, of all property still owned by the dissolved corporation. Therefore, pursuant to Fla.Stat. § 607.301, a fiduciary duty was imposed upon the debtors to hold the Cocoplum property in trust and to distribute any proceeds from the sale of the Cocoplum property to Waterway's creditors.

The debtors breached their statutorily created fiduciary duty when Oviedo Menendez executed a quit claim deed to the Cocoplum property from Waterway to the debtors, individually, although the judgment debt to Arvida remained unsatisfied. Although Gladys Menendez did not sign the quit claim deed, as a trustee, she is charged with knowledge that such a transfer is a breach of her fiduciary duty to Waterway's creditors.

The debtors further breached their fiduciary duties by selling the Cocoplum property to a third party, the Timon Corporation. As a result of the sale, while they were still charged as trustees under Fla. Stat. § 607.301, the debtors received $75,-000.00 which they used to satisfy personal obligations instead of paying Waterway's creditors. Additionally, the second mortgage to Mr. Blanco, which arose as a result of Oviedo Menendez' personal obligation,

was partially satisfied from the proceeds of the sale of the Cocoplum property to the Timon Corporation.

The debtors claim to have no knowledge of the creation of a trust by statute or their status as trustees for the benefit of Waterway's creditors. The debtors argue that the lack of actual notice of the provisions under Fla.Stat. § 607.301 should excuse their actions and absolve them from liability on the Arvida judgment. However, this Court finds this argument to be devoid of merit in that the debtors are charged with the knowledge of such a fiduciary duty, and a claim of ignorance of the duty is an inadequate defense to a breach of fiduciary duty. *Codias*, 78 B.R. 344.

The debtors disregarded their status as trustees for the dissolved corporation. The Court finds that the debtors' acts are sufficient to satisfy the element under 11 U.S.C. § 523(a)(4) that a fraud or defalcation be committed by a debtor while acting in a fiduciary capacity.

The final element required in an 11 U.S.C. § 523(a)(4) action is that the fiduciary duty be in existence prior to and independent of the debtors' alleged misconduct. *Murphy & Robinson Investment Co. v. Cross (In re Cross)*, 666 F.2d 873 (5th Cir.1982).

Generally when a case involves a statutory trust, prior to the trust coming into existence, some type of debtor/creditor relationship has already been established between the parties. In the instant action Arvida was the creditor of Waterway. This relationship qualifies the creditor to be a part of the class of beneficiaries under the trust. If no trust ever comes into being, the creditor is simply a claimant if the debtor subsequently files bankruptcy. *Clark & Rapuano, Inc. v. Morris Ketchum Jr. and Assoc. (In re Morris Ketchum Jr. and Assoc.)*, 409 F.Supp. 743, 746 (S.D.N.Y.1975).

However, upon the creation of a trust pursuant to state statute, another obligation, in addition to and independent of the existing debt is created. *Carey Lumber*, 615 F.2d 370. For example, in *Carey Lumber*, an obligation was created pursuant to a New York state statute when a contractor received funds from a third party which the contractor "was legally required to hold in trust for persons holding, or who later would hold valid lienable claims." The contractor in *Carey Lumber* breached the fiduciary duty imposed by the statute when he misappropriated the funds intended for the beneficiaries of the trust. 615 F.2d at 375. The debt considered in *Carey Lumber* for dischargeability purposes was created by the contractor's misappropriation of construction funds. 615 F.2d at 375.

Other courts have also addressed the application of this element. The *Johnson* court, interpreting 11 U.S.C. § 17(a)(4), the predecessor provision to § 523(a)(4), through the application of the Michigan Building Contract Fund Act, stated that:

> "the relevant act creating the debt or act of wrongdoing out of which the contested debt arose is that created by Johnson's appropriating the monies to his own use in derogation of the Building Contract Fund and failing to make payments to Cashway...."

691 F.2d at 253. Furthermore, the court in *Morris Ketchum*, interpreting the interaction of 11 U.S.C. § 17(a)(4) and the New York Lien Law found that the breach of the statutory fiduciary duty "create[d] an independent liability to plaintiff which was not dischargeable in bankruptcy." 409 F.Supp. at 746.

In the instant case, the original debt was incurred by Waterway to Arvida by the entry of the final judgment in the Topp case. Subsequent to the judgment being entered, the debtors caused Waterway to be dissolved. At the point of dissolution, pursuant to Fla.Stat. § 607.301, the debtors became obligated to Arvida as trustees to insure that any Waterway assets remaining after dissolution were held by the debtors as trustees in trust for the benefit of any remaining creditors. The debtors became personally liable under Fla.Stat. § 607.301 for the Arvida judgment when they breached their statutorily created fiduciary duty by transferring title of the Cocoplum property to themselves and then

subsequently failed to disburse the proceeds derived from the sale of the property to existing creditors of the dissolved Waterway. *United States Fire Ins. Co. v. Morejon,* 338 So.2d 223 (Fla.3d DCA 1976).

The Court finds that subsequent to the creation of the trust pursuant to § 607.301 that the debtors' breached their fiduciary duty to Waterway's creditors thereby causing liability for the Arvida judgment to be imposed on them individually. It is the breach and subsequent imposition of personal liability on the debtors that "created an independent liability to the plaintiff which [is] not dischargeable in bankruptcy" under 11 U.S.C. § 523(a)(4). *Morris Ketchum,* 409 F.Supp. at 746.

Based on the foregoing discussion, the Court finds, pursuant to 11 U.S.C. § 523(a)(4), that the obligation due to Trustee Wright is not a dischargeable debt pursuant to 11 U.S.C. § 523(a)(4) in that it was incurred through fraud or defalcation committed by the debtors while they were acting in a fiduciary capacity. A separate Final Judgment of even date has been entered in conformity herewith.

J. William Boone, Alston & Bird, Atlanta, Ga., for Sun Life Assur. Co. of Canada.

Warren O. Wheeler, Schreeder, Wheeler & Flint, Atlanta, Ga., for Transamerica Life Ins. and Annuity Co.

J. Scott Jacobson, Holt, Ney, Zatcoff & Wasserman, Atlanta, Ga., for Vinland Property Trust.