In re Arthur Christopher
SCHULTZ, Debtor.

MIRAMAR RESOURCES, INC., n/k/a Franklin Credit Management Corporation, a Delaware Corporation, Plaintiff,

v.

Arthur Christopher SCHULTZ,
Defendant.

Bankruptcy No. 96–873–BKC–3F7.
Adversary No. 96–313.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

May 9, 1997.

Lance Paul Cohen, Jacksonville, FL, Peter Lucas, Denver, CO, for plaintiff.

Jason B. Burnett, Jacksonville, FL, Michael A. Roads, Denver, CO, for defendant.

JERRY A. FUNK, Bankruptcy Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

█ This Proceeding is before the Court upon a Complaint to Determine Dischargeability of Debt pursuant to 11 U.S.C. § 523(a)(4) and (a)(6) filed by Miramar Resources, Inc. ("Plaintiff"). (Doc. 1). Arthur Christopher Shultz ("Defendant") filed an Answer. (Doc. 5).[1] A trial was held on February 13, 1997. Based upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

This Proceeding is brought pursuant to 11 U.S.C. § 523(a)(4) and (a)(6) to except from discharge the debt owed by the Defendant to the Plaintiff, from a judgment entered in the United States Bankruptcy Court for the District of Colorado by the Honorable Sidney B. Brooks. Arthur Shultz, the Defendant in this Proceeding was one of the defendants in the adversary proceeding styled, *Miramar Resources, Inc. v. Dominion Investment Limited et al (In re Miramar Resources, Inc.)*, Chapter 11 Case No. 91–24033–DEC, Adv. No. 92–2263–SBB (D.Colo. Oct. 13, 1993) (Pl.'s Ex. 52(c) [hereinafter *"Miramar Resources, Inc."*]). On October 13, 1993, Judge Brooks of the United States Bankruptcy Court for the District of Colorado entered extensive Findings of Fact and Conclusions of Law (Pl.'s Ex. 52(c)) and Judgment ("Colorado Judgment") (Pl.'s Ex. 52(d)) against Arthur Shultz and other defendants, who failed to appear at trial and to defend against the action. Based on Delaware law, Judge Brooks held that the Defendant along with other defendants, as directors of Miramar Resources, Inc., the plaintiff corporation, had breached their fiduciary duties. (Pl.'s Ex. 52(c) at ¶ 93). The Colorado Judgment was in the amount of $1,051,404.89 plus interest. (Pl.'s Ex. 52(d)).

Arthur Shultz filed a voluntary Chapter 7 Bankruptcy petition on February 16, 1996 in this Court. This Proceeding was commenced on May 28, 1996 by the Plaintiff, Miramar Resources, Inc., for an exception from discharge under 11 U.S.C. § 523(a)(4) and (a)(6). (Doc. 1). On August 28, 1996, this Court entered an Order denying Plaintiff's Motion for Summary Judgment (Doc. 14) finding

> [t]he analysis of fiduciary duties differ for breach of fiduciary duty analyzed under corporate law principles, the issue before Judge Brooks, and "acting in a fiduciary duty" found in Section 523(a)(4), as is before this Court. As required by

---

1. Defendant's answer contains two affirmative defenses. (Doc. 11). First, Defendant claims that the Complaint fails to state facts which would support any exception to discharge under 11 U.S.C. § 523(a)(4) and (6). Second, he claims that the Complaint is barred by the doctrine of accord and satisfaction. Because the Defendant did not present any evidence on these defenses in trial or in his post-trial memorandum, nor did he address the defenses in his trial memorandum (Doc. 20), the Court finds the defenses to be abandoned and without merit.

§ 523(a)(4), Plaintiff must prove an express or technical trust existed between the Defendant, Shultz, and the Plaintiff, Miramar Resources, Inc. Judge Brooks did not find that an express or technical trust existed, nor was that issue before him.[2]

The Court did not have adequate information upon which to warrant collateral estoppel as to the issue of defalcation in a fiduciary capacity, and therefore, this Court denied the Motion for Summary Judgment to determine the extent of the Defendant's knowledge and participation in the transaction.

■ Although this Court did not find the issue of defalcation of a fiduciary duty to be fully decided by Judge Brooks, this Court does adopt the factual findings made by Judge Brooks. The Court agrees with the Plaintiff that "the factual findings made by the Colorado Bankruptcy Court in Exhibit 52(c) bind the Debtor in this proceeding under *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)." (Doc. 27, Plaintiff Miramar Resources, Inc.'s Closing Statement at 2–3).[3]

■ In *Grogan v. Garner*, the Supreme Court held that collateral estoppel does apply to discharge exception proceedings under 11 U.S.C. § 523(a). 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). The Eleventh Circuit requires four factors to be met before collateral estoppel applies to preclude the relitigation of facts. *Bush v. Balfour Beatty Bahamas, Limited (In re Bush)*, 62 F.3d 1319 (11th Cir.1995). These factors include: (1) the issue at stake must be identical to the issue involved in the prior litigation, (2) the issue must have been actually litigated in the prior suit, (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that litigation, and finally, (4) the burden of persuasion in the current proceeding must not be significantly heavier than the burden of persuasion in the initial action. *Id.* at 1322. This Court finds that it is collaterally estopped to determine the damage to Miramar and the Defendant's debt to Miramar, as these issues were the same issues as in the case before Judge Brooks, the issues were actually litigated in the prior case,[4] the determination of the issue

---

2. Specifically addressing the findings made by Judge Brooks which reference the acts taken by the Defendant, the findings are sparse. The board meetings referenced by Judge Brooks never mention Defendant's name as being present (*See, e.g., Miramar Resources, Inc.* at ¶ 23, 51, 56, and 67).

Furthermore, the United States Bankruptcy Court for the District of New Mexico granted the Plaintiffs Motion for Summary Judgment in the Case involving Zachary Shultz, the brother of the Defendant, Arthur Shultz. *Miramar Resources, Inc. v. Shultz (In re Shultz)*, 205 B.R. 952 (Bankr. D.N.M.1997). The court found that it was collaterally estopped by Judge Brooks' decision. *Id* at 955. Likewise, the United States Bankruptcy Court for the Northern District of Texas granted the Plaintiffs Motion for Summary Judgment in the Case involving William Shultz, Sr., the Defendant's father. (unpublished Memorandum of Opinion on Non-dischargeability of Judgment; *Miramar Resources, Inc. v. William Butler Shultz, Sr.*, Adv. No. 296–2020 (United States Bankruptcy Court for the Northern District of Texas, Amarillo Division)). This Court would add that the findings made by Judge Brooks indicate larger participation by Zachary Shultz and William Shultz, Sr. *See, e.g., Miramar Resources, Inc. v. Dominion Investment Limited et al (In re Miramar Resources, Inc.)* (Pl.'s Ex. 52(c)). The findings by Judge Brooks as against Arthur Shultz were not, in this Court's opinion, enough to

satisfy collateral estoppel in a Motion for Summary Judgment.

3. In *Brown*, the Supreme Court specifically addressed the issue of res judicata, not collateral estoppel. 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10. The Court stated: "[t]his case concerns res judicata only, and not the narrower principle of collateral estoppel ... [which] treats as final only those questions actually and necessarily decided in a prior suit ... If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would permit relitigation of those issues in the bankruptcy court." *Id.* The Court does not find that countervailing statutory policy exists to bar relitigation of the factual findings made by Judge Brooks.

4. Notably, the Defendant did not make an appearance at the trial before Judge Brooks, and the Colorado Judgment was entered on a default. *Miramar Resources, Inc.* at ¶ 5. Therefore, Judge Brooks did not have the testimony of Defendant before him. Furthermore, as stated in this Court's August 28, 1996 Order Denying Motion for Summary Judgment, although a default judgment can suffice for collateral estoppel to apply, in this instance the fact that Defendant never testified, this Court opined that that testimony

was a critical and necessary part of the Judgment entered by Judge Brooks, and the burden of persuasion was not on the Defendant in the previous litigation. Therefore, this Court will utilize the factual findings made by Judge Brooks and will supplement the findings with the evidence introduced at trial as to the issue of dischargeability of debt for defalcation while acting in a fiduciary capacity.

The Defendant and his family members were directors of the Plaintiff Company, Miramar Resources, Inc.[5] Prior to July 17, 1991, Miramar had eight members on the Board of Directors including five members of the Shultz family (William B.Shultz, Sr., and his four sons, Jeb, Arthur, Zachary, and William, Jr.) and three non-Shultz family members (Robert Rupert, Thomas Axon, and J. Michael Belanger), "the outside directors." (*Miramar Resources, Inc.* at ¶ 8). On or about July 1, 1991, William Shultz, Sr. contacted and retained Whitehall Company, Ltd., a investment banking firm. (*Id.* at ¶ 9). Whitehall was also retained by a group of entities known as the Dominion Group to locate publicly traded companies where the management of the company was willing to relinquish control. (*Id.* at ¶ 10). Whitehall brought the Shultz family and Dominion Group together. (*Id.* at ¶ 11). Whitehall brokered the sale of the control of Miramar, and Dominion agreed to pay the Shultz family $1 million for control of Miramar. (*Id.*). William Shultz, Sr. contacted the outside directors of Miramar and requested that they execute a document authorizing Miramar to enter into a series of transactions, including a sale of 40 million shares of Miramar stock to Dominion for $1 million. (*Id.* at 12). In addition, an Italian car company was to be placed in Miramar. (*Id.*). The transaction also included a non-recourse loan from Miramar to Tascosa Petroleum, Inc. for $1 million, Tascosa being owned by the Shultz Family. (*Id.* at ¶ 12–13).

On July 20, 1991, the resolutions were presented at a board meeting with all the directors present by conference call. (*Id.* at ¶ 16–17). The resolutions discussed included: (a) Miramar would issue 40 million shares of its common stock to Dominion upon the payment to Miramar by Dominion of $1 million; (b) the Directors of Miramar would resign; (c) Miramar would lend Tascosa $1 million against which Tascosa would pledge the approximately 770,000 shares of Miramar stock held by the Shultz family; and (d) Dominion would put substantial assets into Miramar (specifically, the Italian car company). (*Id.* at ¶ 17). William Shultz, Sr. stated that the Shultz family wanted to invest the $1 million in Florida. (*Id.*). The outside directors objected to these proposals and required a fairness opinion be obtained before they would approve the transaction. (*Id.* at ¶ 18).

A second meeting was held on July 23, 1991 where certain resolutions were passed, including: (1) Miramar would issue 40 million shares of its stock to Dominion for $1 million; (2) Miramar would issue 25 million shares of its stock to Dominion for $25 million; (3) Miramar was to buy an Italian car company for $25 million; and (4) no loan would be made by Miramar to Tascosa or any entity controlled by the Shultz family or to Shultz family members directly or indirectly. (*Id.* at ¶ 24). On or about July 23, 1991, William Shultz, Sr., sold the Miramar stock owned by the Shultz family to Dominion and received $727,406 for the control of the corporation. (*Id.* at ¶ 39). On or about August 2, 1991, Defendant's brother, Jeb, executed various assignments purporting to transfer Miramar's oil and gas interests to a company known as Pathfinder; this transaction was also arranged by Whitehall. (*Id.* at ¶ 35–36).

Additional facts came out during trial before this Court. First, evidence demonstrated that the Defendant had signed a resignation as a director of Miramar on or about July 17, 1991. (Pl.'s Ex.3). Furthermore,

was essential to establish the express or technical trust required for an exception to discharge.

**5.** The Defendant and family members also held various positions as officers of the company. Allegedly, the Defendant was the vice-president at

one point in time. Neither party briefed, nor argued the Case as it would relate to his position as an officer; therefore, the Court will analyze this issue in terms of the Defendant's breach of a fiduciary duty as a director of Miramar.

testimony at trial revealed that Defendant was present at the July 20, 1991 Board of Director's meeting. Furthermore, it appears to the Court that the Defendant's participation in the meeting was minimal; however, his presence at the meeting and comprehension of the events is uncontroverted. However, as to the July 23, 1991 meeting, where the resolutions in question were passed, the Defendant, having waived notice of the meeting, was not present. (Pl.'s Ex. 6). Furthermore, evidence was introduced that the Defendant held a seat on the Chicago Mercantile Exchange and held a securities license. Additional testimony revealed that the Defendant was a sophisticated business man. In relation to the transactions in question, the Defendant testified that until May or June of 1991, he worked at Leisure Living, the project into which the monies from the Dominion transaction were to be placed. Additionally, testimony revealed that a business owned in part by the Defendant's wife was to receive approximately $6 million from a settlement agreement with Leisure Living.

## CONCLUSIONS OF LAW

■ Section 523(a)(4) provides that a debtor will not be discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity...." 11 U.S.C. § 523(a)(4) (1997). In order to except a debt from discharge under 11 U.S.C. § 523(a)(4), a plaintiff must prove:

a. that the debtors were acting in a fiduciary capacity;

b. that while acting in the fiduciary capacity they committed fraud or defalcation;

c. the fraud or defalcation must occur subsequent to the creation of the fiduciary capacity and with reference thereto.

*Wright v. Menendez (In re Menendez)*, 107 B.R. 789, 791 (Bankr.S.D.Fla.1989) (citing *Kimmle v. Cramer (In re Cramer)*, 93 B.R. 764, 767 (Bankr.M.D.Fla.1988)). Federal courts have found that "the traditional meaning of the term 'fiduciary'—a relationship involving confidence, trust, and good faith—to be far too broad for bankruptcy purposes." *Liberty National Bank v. Wing (In re Wing)*, 96 B.R. 369, 374 (Bankr.M.D.Fla. 1989) (citing *Chapman v. Forsyth*, 2 U.S. (How.) 202 (1844)).

■ Although state law is relevant in the determination of fiduciary duties under § 523(a)(4), in order to find a fiduciary duty as required by Section 523(a)(4), the bankruptcy courts must find "an express or technical trust" giving rise to the fiduciary duty. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). The express or technical trust aspect of Section 523(a)(4) requires that there be "a segregated trust *res*, an identifiable beneficiary, and affirmative trust duties established by contract or by statute." *American Surety & Casualty Co. v. Hutchinson (In re Hutchinson)*, 193 B.R. 61, 65 (Bankr.M.D.Fla.1996) (citations omitted). A state statute can supply such a fiduciary duty. *Wright v. Menendez (In re Menendez)*, 107 B.R. 789, 791 (Bankr.S.D.Fla.1989).[6]

■ Delaware is the state of incorporation of the Plaintiff corporation, Miramar Resources, Inc. Therefore, Delaware law will be considered in the issue of who is a fiduciary. *See* RESTATEMENT (SECOND) OF CONFLICTS Section 302.[7] Plaintiff argues that

---

6. In *Wright v. Menendez*, the court found that a fiduciary duty sufficient for the § 523(a)(4) discharge exception did not exist merely due to the debtors' positions as officers and directors of a corporation, but instead found the express or technical trust requirement fulfilled by Florida Statute § 607.301 which holds that directors of a corporation at the time of dissolution constitute a board of trustees for any property owned or acquired by the dissolved corporation. *Id.* at 791–92. This trustee position fulfilled the requirement of an express or technical trust that gives rise to a fiduciary duty sufficient for a § 523(a)(4) discharge exception. *Id.* at 792.

7. Section 302 provides that the law of the state of incorporation shall be applied to determine issues involving the rights and liabilities of a corporation, unless it can be shown that some other state has a more significant relationship to the occurrence and the parties. RESTATEMENT (SECOND) OF CONFLICTS § 302. The Court does not find that any other state can demonstrate a more significant relationship to the transaction; therefore, Delaware law is the law that the Court will look to for the definition of a fiduciary.

under Delaware law, directors of a corporation stand in the position of trustees with the shareholders, citing to *Petty v. Penntech Papers, Inc.,* 347 A.2d 140 (Del.Ch.1975). In this Proceeding, although Defendant was a director of the Plaintiff corporation, this fact alone does not establish an express or technical trust as required for an exception from discharge under Section 523(a)(4). The Defendant's position as a director does not per se make him a trustee to the corporation. The reason for the denial of the Motion for Summary Judgment was that additional proof was needed to fulfill the "express or technical trust" requirement. Notably, there is Delaware case law that states "corporate officers and directors, while technically not trustees, stand in a fiduciary relation to the corporation and its stockholders." *Bovay v. H.M. Byllesby & Co.,* 38 A.2d 808, 813 (Del. 1944) (citing *Guth v. Loft, Inc.,* 5 A.2d 503, 510 (Del.1939)). Therefore, as a director of Miramar, Defendant may have been a fiduciary, but not a trustee under traditional Delaware corporate doctrine.

Plaintiff's second argument that Defendant is a "trustee" is made under the Delaware Trust Fund Doctrine. This doctrine states that upon a corporation's insolvency, "the trust arises, and the legality of the acts thereafter performed [by the officers and directors] will be decided by very different principles than in the case of solvency." *Id.* Therefore, when the "insolvency exception does arise, it creates fiduciary duties for directors for the benefit of creditors." *See, Geyer v. Ingersoll Publications Co.,* 621 A.2d 784, 787 (Del.Ch.1992). Moreover, it has been found that "where a corporation is operating in the vicinity of insolvency, a board of directors is not merely the agent of the residue risk bearers, but owes its duty to the corporate enterprise." *Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications, Corp.* No. 12150, 1991 WL 277613 at *34 (Del.Ch. Dec.30, 1991). Furthermore, in *Askanase v. Fatjo,* 1993 WL 208440 at *5 (S.D.Tex.), the Texas district court determined that the Delaware Trust Fund Doctrine comes into play not only in instances of complete insolvency, but also in instances where the corporation is "on the brink of insolvency." Additionally, the *Fatjo* court

stated that "[i]t is likewise of no importance that the director did not know the corporation was insolvent or believed it to be solvent." *Id.*

Addressing the Trust Fund Doctrine, it appears that Miramar Resources, Inc. at the time of the transactions in question was a solvent corporation; however, testimony at trial revealed that the majority of the assets of the company were conveyed without consideration through the transactions with the Dominion Group and also through the assignment of Miramar's oil and gas leases by Jeb Shultz, the Defendant's brother. At the July 20, 1991 meeting, the Defendant knew that if the proposed transactions actually came to fruition that Miramar would be rendered insolvent; therefore, he knew that Miramar was at the "brink of insolvency" just prior to the transactions. Thus, pursuant to the Delaware Trust Fund Doctrine at the time of the July 20, 1991 meeting, the Defendant was a trustee of the corporation with the *res* being the corporate assets, the beneficiary being the other directors and the shareholders, and the affirmative duties being to act in the best interest of the corporation, including the other directors and shareholders. Furthermore, knowing that the outside directors objected to the transaction and had requested a fairness opinion, Defendant had further duties to act in the best interest of the other directors and shareholders in relation to the money received from Dominion.

Defendant argues that the resolutions passed at the July 23, 1991 meeting, which the Defendant did not attend, provided the specific authority for Miramar to proceed with the Dominion transaction. However, it is shown that he profited from the sale and that he was present at the July 20th meeting, which gave him the knowledge of what would transpire in the up-coming days. He further argues that the sale of stock by his father as analyzed by Judge Brooks was a constructive trust, which is insufficient for § 523(a)(4). However, the Court does not find this argument to be persuasive as case law allows reference to state law and its corporate doctrine, such as the Trust Fund Doctrine, to fulfill the express or technical trust requirement.

Upon a finding that the Defendant is a fiduciary as that term is defined

under § 523(a)(4), the Court must decide whether while acting in the fiduciary capacity he committed fraud or defalcation. Defalcation has been defined as "a willful neglect of duty" and does not require intentional conduct. *See, In re Moreno,* 892 F.2d 417, 420 (5th Cir.1990). And a Fifth Circuit case found that "where a debtor misuses 'his position to gain a personal benefit at the expense of the corporation or corporate creditors' thereby breaching a fiduciary duty, such acts have been found to constitute defalcation." *Wright v. Menendez (In re Menendez),* 107 B.R. 789, 791 (Bankr.S.D.Fla.1988)(citing *Maguire v. Herzog,* 421 F.2d 419, 422 (5th Cir.1970)). Furthermore, the Court finds that a director of a corporation can breach his fiduciary duty to the corporation by failing to disclose the circumstances and purposes of a transaction, particularly transfers that were solely for his benefit and were of no benefit to the corporation.

In this Proceeding, testimony was given that the Defendant was at the very least aware of the actions of the board of directors. Regardless of any of his motivations, he failed to ensure that the fairness opinion was obtained. This is a "willful neglect of duty." Evidence at the trial demonstrated that although Defendant did not take an active role as a director in Miramar Resources, Inc., he was nonetheless present when certain decisions were made that ultimately adversely affected the corporation and which led to the imposition of the Colorado Judgment. Testimony given at trial demonstrated that the Defendant knew of the request for the fairness opinion. Furthermore, one of the outside directors specifically stated that he recalled the Defendant asking if obtaining the fairness opinion would cause an unnecessary delay in the transactions.

Defendant argues that he was basically a figurehead director, who signed whatever his father put in front of him, and that living in Florida, he was not involved in the day to day transactions and goings on of the corporation. However, testimony revealed that he is a sophisticated business man. The Defendant testified that until May or June of 1991, he worked at Leisure Living, the project into which the monies from the Dominion transaction were to be placed. Additionally, testimony revealed that a business owned in part by the Defendant's wife was to receive approximately $6 million from a settlement agreement with Leisure Living. Furthermore, the signing of the resignation prior to the actual meeting is irrelevant as he continued to act as a director, and the tentative resignation was just part and parcel of the whole transaction and does not absolve him of the liability.

■ The last requirement under § 523(a)(4) necessitates that the fraud or defalcation must occur subsequent to the creation of the fiduciary capacity and without reference thereto. As previously stated, the "fiduciary/trustee relationship" was created at the point in time that the transactions were being considered-i.e., the July 20, 1991 meeting. The corporation was basically at the brink of insolvency, and he was a trustee. The defalcation occurred when he failed to get the fairness opinion or to distribute all of the proceeds. Therefore, defalcation occurred subsequent to the creation of a fiduciary duty and without reference thereto.

■ Plaintiff's second basis for exception from discharge is Section 523(a)(6). Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (1997). Judge Brooks did not make findings which establish an exception to discharge under this section; therefore, the Plaintiff was still required to prove these elements in this Proceeding. The only reference that Judge Brooks made was "because the conduct of the Shultz family ... was willful and deliberate, it is appropriate to award fees and costs incurred in the litigation." (*Miramar Resources, Inc.* at ¶ 105). "Willful" as contained within section 523(a)(6), has been interpreted to mean "a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another," and "malicious" is interpreted to mean "wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill-will." *Hope v. Walker, (In re Walker),* 48 F.3d 1161, 1163–64 (11th Cir.1995) (citations omitted).

In this Proceeding, the Defendant's actions are at the very least a reckless disregard of the rights of the shareholders and other di-

rectors of Miramar. However, the Court is not convinced that the Plaintiff sustained its burden and actually proved by a preponderance of the evidence that the Defendant acted intentionally as it is interpreted under 11 U.S.C. § 523(a)(6). Therefore, not meeting the first prong of the willfulness required, the debt would not be excepted from the discharge under Section 523(a)(6).

A separate order will be entered in accordance with the foregoing.

### *JUDGMENT*

This Proceeding is before the Court upon a Complaint to Determine Dischargeability of Debt pursuant to 11 U.S.C. § 523(a)(4) and (a)(6) filed by Miramar Resources, Inc. ("Plaintiff"). (Doc. 1). Arthur Christopher Shultz ("Defendant") filed an Answer. (Doc. 5). A trial was held on February 13, 1997. Based upon the Findings of Fact and Conclusions of Law separately entered, it is

**ORDERED:**

The debt owed to the Plaintiff, Miramar Resources, Inc., by the Defendant, Arthur Christopher Shultz, in the amount of $1,051,-404.89 is excepted from the Defendant's discharge pursuant to 11 U.S.C. 523(a)(4).